398 So.2d 1331 (1981)
Robert Earl MAY, Jr., alias Bubba May, Jr.
v.
STATE of Mississippi.
No. 52543.
Supreme Court of Mississippi.
June 3, 1981.
*1332 Mary C. Henkel, Ronald Reid Welch, Jackson, for appellant.
Bill Allain, Atty. Gen. by Billy L. Gore, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and LEE and HAWKINS, JJ.
LEE, Justice, for the Court:
Robert Earl May, Jr. (Bubba May) was jointly indicted in the Circuit Court of Lincoln County with Ernest Earl Toliver, Lawrence E. Williams, and Bob Henry Terrell for armed robbery. Appellant's accomplices pled guilty and received twelve-year sentences. A jury found appellant guilty but did not fix sentence. The trial judge, Honorable Joe N. Pigott, sentenced May to twelve (12) years with the Mississippi Department of Corrections, and May has appealed, assigning fourteen (14) errors in the trial below. For purposes of appeal, they are consolidated into three (3) broad contentions, which will be discussed hereinafter.
On December 26, 1978, four (4) black males, one of whom was armed with a shotgun, robbed Mark Malone, proprietor of a fireworks stand in Lincoln County. Two (2) of the robbers wore stocking masks and two (2) were barefaced. One (1) of the unmasked males, later identified as appellant, took a money box containing thirty-seven dollars ($37.00) and a pistol from Malone, and the four fled. Malone and a bystander pursued them, but failed to catch up with the robbers. However, they were successful in recovering the money box and its contents along the roadside. Shortly thereafter, having received a reliable tip, police officers ascertained the identity of the four males and arrested them. One of the four was appellant, a fourteen-year-old sixth grade dropout. The others were aged seventeen (17), eighteen (18) and twenty-five (25) years.
All four of the robbers entered pleas of guilty on January 17, 1979, and each was sentenced by the circuit judge to twelve (12) years in the custody of the Mississippi Department of Corrections. A great deal of public criticism resulted from appellant's sentence, due to his age, and on February 23, 1979, the court granted his motion to withdraw the guilty plea, entered a plea of not guilty for him, and released him on bond. Appellant's motion to transfer the cause to the Youth Court was overruled. Voluminous pretrial matters were filed and appellant's attorneys sought, and the court granted, a separate trial on appellant's competency to stand trial on the charge of armed robbery.

I.
Was the verdict of the jury on competency to stand trial manifestly against the weight of credible evidence and the result of bias, prejudice and/or fraud?
Appellant contends that he was not competent to stand trial on the armed robbery charge. A jury was impaneled and a two-day competency hearing was held. At the conclusion of the hearing, the jury returned the following verdict:
"We, the jury, find that the defendant is now mentally competent to conduct a rational defense in this case."
*1333 "Competent to stand trial" has been defined in Mississippi as requiring the defendant to be able to make a rational defense in that he show ability to intelligently confer with counsel about facts of the crime. Hawie v. State, 125 Miss. 589, 88 So. 167 (1921).
In Jaquith v. Beckwith, 248 Miss. 491, 157 So.2d 403 (1963), the Court said:
"[T]he court is concerned with a defendant being physically and mentally able to confer with his counsel as to the merits of the case, and to testify as a witness in his own behalf. In short, he should be able to comprehend his position and to participate rationally in his defense." 248 Miss. at 499-500, 157 So.2d at 407.
See also Dushy v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960), and Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975).
In applying the principle of law stated in the above cases, we examine the record to determine whether or not it reflects that appellant, at the time of the competency hearing, understood the charges against him and possessed the ability to rationally confer with his counsel and participate in the preparation of his defense. The appellant called seven (7) witnesses to prove his incompetency to stand trial.
Dr. Michael Whiddon, Ph.D., an independent criminal psychologist and director of clinical services for the Department of Corrections, testified that appellant had an IQ of 70 and that he was a borderline retardate. He felt that appellant was not competent to stand trial as an adult. However, Dr. Whiddon stated in a letter dated September 5, 1979, that "No comment will be made concerning May's understanding of right and wrong or his ability to contribute to his defense. This type of evaluation was not done... ." He further testified:
"BY MR. KITCHENS:
Q. Doctor, you said he didn't know what the defenses were and I just wanted to see if you knew, so you would know whether he was telling you right or not?
A. I understand.
Q. What are the defenses?
A. The defenses that I am aware of, at that time, for example, would include an appeal. Does he have the opportunity for an appeal?
Q. Yes, sir?
A. And I think that was one of the options most widely used by people who come to the penitentiary, so in the context that we were working, that is the first thing I wanted him to know if he understood the appeal process.
Q. Doctor, I'm not implying that you didn't ask him the right questions for his situation at that time, but the truth is, isn't it, that you were not dealing with him to determine whether he could stand trial or whether he was mentally competent to stand trial because you were not expecting him to stand trial, were you?
A. That's correct. That is not the question I was trying to answer.
Q. I don't mean to suggest that you were not doing your job properly at the time, but the context in which you were asking him these questions was quite different from the context in which you have been questioned today concerning his competency to stand trial, am I not right?
A. Yes, sir."
Miss Julie Epps, May's attorney from February, 1979, to her withdrawal on the date of the competency hearing, testified that appellant could not rationally confer with her about choices which he had, that he was unable to concentrate for more than fifteen (15) or so minutes, that he would go to sleep during her discussions with him and at times would suck his thumb. It was her opinion that appellant could not make necessary decisions in order for her to defend him and that he was not competent to stand trial. She admitted that appellant signed a retainer form expressing his wish that she and Mr. Ron Welch, attorney, represent him, that she would not permit him to sign *1334 something he did not understand, that appellant waived the privilege, that she represented appellant when he withdrew his guilty plea and she stated to the circuit judge at that time appellant knew and understood what he was doing.
Rita Grace, speech pathologist and Director of the Communications Disorder Department at the Hudspeth State Mental Retardation Center at Whitfield, testified that, in January, 1980, she evaluated appellant, who had been referred to her by one Jackie Fleming of the Jump Street Program[1] for evaluation in the school placement program. He scored at the fourth month-fourth grade level in mathematics, at the third month-third grade level in reading recognition, and at the eighth month-third grade level in reading comprehension, spelling and general information. She gave no opinion as to May's competency to stand trial.
Deborah Lovell, associate psychologist at Hudspeth, testified that on January 8, 1980, she administered psychological tests to appellant, and, according to the composite evaluation, appellant was "functioning in the borderline of measured intelligence with receptive vocabulary being in the mild retardation range." She expressed no opinion as to May's competency to stand trial.
Jacqueline Fleming, director of the Jump Street Program for Mentally Retarded Juvenile Offenders, located at the Hudspeth Retardation Center, testified that "Our basic requirements are that the kid be mentally retarded, which means that his action score is ranging between 50 and 75." A child who did not meet this score could not be admitted to the program. She said, "Now I think he is more able to communicate with his attorneys. He understands a little bit about what is happening, although I'm not sure he understands the total picture, because ... I don't." Mrs. Fleming expressed no opinion as to appellant's mental competency to stand trial.
Minnie Dallas, appellant's special education classroom teacher at Hudspeth since July, 1979, testified that May was presently functioning at the age level of an 8-year-old, and that he was doing very well in math and pretty good in both language and spelling, and was improving. She would give no opinion as to whether or not appellant "... fully understands the courtroom process ... to make decisions about such things as waiver of rights and legal rights ... because I don't know them myself."
Dr. Beth Wildman, Ph.D., a licensed psychologist, originator and former director of the Jump Street Program, and consulting psychologist to Hudspeth, testified that she had observed appellant in her capacity as consultant over a period of one (1) year. She was of the opinion that he is functioning as a ten or eleven-year-old, cannot understand the range of possible verdicts, cannot make a decision, cannot testify meaningfully in his own defense, and was not competent to stand trial because he could not understand the proceedings nor could he be involved in decisions. On cross-examination, Dr. Wildman testified that she did not do competency testing as a routine part of her work and that testing at Hudspeth was not designed to determine whether May was competent to stand trial, but to test him for educational placement and planning. She was not a forensic psychologist, "who is defined as a person who usually specializes in issues which relate to psychology and the law."
The prosecution introduced four (4) witnesses. Dr. Donald Guild, Director of Forensic Psychiatry at Whitfield, and a lawyer licensed to practice law in the State of Mississippi, testified that he examined the transcript of the suppression proceeding and interviewed appellant. In his opinion, appellant was competent to a reasonable psychiatric certainty to stand trial. He also testified:
"I took in consideration the discussions with counsel on their feelings of competency, *1335 their difficulties in relating to Mr. May, their difficulties in working with him. I took in consideration, and certainly placed considerable weight on the intelligence testing that was done, the discussion with the psychologist that did that. Then further, discussions with the psychologist at Hudspeth Center, at the Jump Street program, her interpretations of his behavior and her interpretations of his stay at the Hudspeth Center. Last, and certainly not least, I had an interview with Mr. May. It was brief, but that certainly is a significant part."
The record of Dr. Guild's testimony further indicates:
(1) Dr. Guild "routinely and regularly" performed competency interviews; May's case involved the thirteenth such interview he had conducted that week.
(2) Dr. Guild felt he had sufficient time to interview May and formulate a valid and reliable opinion as to mental competency "... especially since, in this case, [he] had extensive history ..." and the full cooperation of defense counsel in permitting him to discuss the case with Dr. Whiddon and Dr. Wildman.
(3) Dr. Guild and Dr. Stanley, a psychologist, evaluated May together as a team. After talking to the defendant's attorneys and Bubba's psychologist, both Guild and Stanley went over the test materials. Following a thirty-minute interview with May conducted in the presence of Dr. Whiddon and Dr. Wildman, the experts exchanged opinions, comments, and criticisms. Guild and Stanley further discussed the matter with one another after this.
(4) During cross-examination, Dr. Guild acknowledged that he and Dr. Stanley disagreed with the defendant's psychologists. While all of the experts observed the same behavior, there was a legitimate disagreement as to what it meant and what it was. Such was not unusual. "We respect each other's opinions. We just differ."
Lewis McDaniel, a lay witness for the State, expressed no opinion as to May's competency to stand trial, but he testified that he had known appellant since he was nine (9) or ten (10) years of age, that he coached appellant the past two (2) summers in Little League Baseball, that appellant was the starting left fielder and co-captain of the team and that he and appellant had no difficulty in communicating with each other.
Alton Jackson, the arresting officer, gave no opinion as to appellant's competency to stand trial, but he stated that appellant acted "pretty normal" at the time of his arrest, that he was "lively, talking well, and everything like that."
Dr. Charlton Stanley, Ph.D., forensic psychologist at the Mississippi State Hospital and private practitioner, is one of two (2) "diplomates" of the American Board of Forensic Psychology practicing in the State of Mississippi, a member of the Mississippi State Board of Examiners. Dr. Stanley testified that he and Dr. Guild examined appellant the previous day, and, on the basis of that examination, together with other factors taken into consideration, he formed the opinion that appellant was competent to stand trial. In evaluating appellant, Dr. Stanley used the McGary-Lippitt criteria contained in the handbook called "Competency to Stand Trial and Mental Illness." This publication, according to Dr. Stanley, is a standard in the profession for those who regularly do competency examinations. The bases for Dr. Stanley's opinion that appellant was competent to stand trial were his examination of the transcript, the test results and reports of the other psychologists and professionals who had examined him before, his observations of appellant in the courtroom and his interview with appellant.
An issue was presented to the jury as to whether or not appellant was competent to stand trial. Expert witnesses testified for both the prosecution and the appellant. It is elementary that judges and juries are not bound to accept testimony of expert witnesses but may reject all or parts of such testimony. Matthews v. State, 394 So.2d 304 (Miss. 1981). Worth and weight of the evidence and credibility of witnesses are for *1336 the jury to determine. Gathright v. State, 380 So.2d 1276 (Miss. 1980); Ainsworth v. State, 304 So.2d 656 (Miss. 1975); Davis v. State, 377 So.2d 1076 (Miss. 1979); Lias v. State, 362 So.2d 198 (Miss. 1978).
We are of the opinion that the competency issue was properly submitted to the jury and that the verdict is supported by the evidence. Consequently, this assignment of error is not well taken.

II.
Was appellant criminally responsible for his acts because of "feeble-mindedness" or mental retardation?
Appellant requested and was refused the following instruction:
"The Court instructs the jury that if you find that Robert Earl May, Jr., was not responsible for his acts because of feeble-mindedness or mental retardation, then you should find him `NOT GUILTY.'"
Mississippi Code Annotated Section 99-13-1 (1972) defines "feeble-mindedness" as follows:
"The term `feeble-minded,' within the meaning if this chapter shall apply to any and all persons with such a degree of mental inferiority from birth, or from infancy or early childhood, that they are unable to care for themselves, to profit by ordinary public school instruction, to compete on equal terms with others, or to manage themselves and their affairs with ordinary prudence, and consequently constitute menaces to the happiness or safety of themselves or of other persons in the community, and require care, supervision and control either for their own protection or for the protection of others. These persons denominated feeble-minded comprise those commonly called idiots, imbeciles and morons, or high grade feeble-minded persons. Feeble-minded persons may, or may not, be subject to epileptic seizures."
Mississippi Code Annotated Section 99-13-9 (1972) states:
"When any person shall be indicted for an offense, and acquitted on the ground of feeble-mindedness, the jury rendering the verdict shall state therein such ground, and whether the accused constitutes a danger to life or property, and to the peace and safety of the community; and if the jury certify that such feeble-minded person is dangerous to the peace and safety of the community, or to himself, the court shall forthwith give notice of the case to the chancellor, or the clerk of the chancery court, whose duty it shall be to proceed with such person according to the law provided in the case of feeble-minded persons, the feeble-minded person himself being remanded to custody to await the action of the chancery court."
The appellant contends that the court should have granted the above instruction since the proof was overwhelming that appellant was feeble-minded and, therefore, not criminally responsible in the armed robbery. The statutes mentioned above do not overrule our cases which follow the M'Naughten rule and hold that feeble-mindedness or mental retardation is not a ground for acquittal unless at the time the accused committed the act, he did not realize and appreciate the nature and quality thereof and could not distinguish right from wrong. Harris v. State, 386 So.2d 393 (Miss. 1980); Warren v. State, 285 So.2d 756 (Miss. 1973). We find no merit in this assignment of error.

III.
Did the lower court abuse its discretion in sentencing appellant to a term of twelve (12) years in the custody of the Mississippi Department of Corrections in that such sentence was not in the best interest of appellant and the public welfare and constitutes cruel and unusual punishment as applied to appellant?
Under this assignment, appellant contends that due to his youth (14 years old) and mental retardation, the twelve-year sentence constituted (1) cruel and unusual punishment, and (2) an abuse of the trial court's discretion.
*1337 Mississippi Code Annotated Section 97-3-79 (Supp. 1980) states that the penalty upon conviction of armed robbery shall be from three (3) years to a maximum of life imprisonment, if the latter is fixed by the jury. Mississippi Code Annotated Section 47-7-3(d) (Supp. 1980) provides that if a firearm is displayed by a person committing the crime of robbery, such person is ineligible for parole until ten (10) years of the sentence has been served. In the case sub judice both of the above sections were violated and appellant was sentenced to a term of twelve (12) years, resulting in his ineligibility for parole until ten years of that sentence has been served. This Court has held in many cases that the imposition of sentence is within the sound discretion of the trial court and that we will not review the sentence so imposed if it is within the prescribed limits of the statute. Yazzie v. State, 366 So.2d 240 (Miss. 1979); Ainsworth v. State, 304 So.2d 656 (Miss. 1975).
In White v. State, 374 So.2d 843 (Miss. 1979), we held a life sentence without eligibility for parole, imposed upon a 16-year-old youth convicted of armed robbery, was not cruel and unusual punishment in violation of the Eighth Amendment rights. No Mississippi case involving a 14-year-old child, who is mentally retarded with the intellect of a seven to eleven-year-old child, has been brought to our attention.
In addition to the criminal penalties discussed above, Mississippi Code Annotated Section 43-21-159(3) (Supp. 1980), a part of the "Youth Court Act," provides alternative criminal sanctions, as follows:
"(3) In any case wherein the defendant is a child as defined in this chapter and of which the circuit court has original jurisdiction, the circuit judge, upon a finding that it would be in the best interest of such child and in the interest of justice, may at any stage of the proceedings prior to the attachment of jeopardy transfer such proceedings to the youth court for further proceedings unless the child has previously been the subject of a transfer from the youth court to the circuit court for trial as an adult and was convicted, and the youth court shall, upon acquiring jurisdiction, proceed as provided in this chapter for the adjudication and disposition of delinquent child proceedings; and if any child shall be convicted by any circuit court, the trial judge, if he deems it for the best interest of such child and the public welfare, may, in his discretion, and in lieu of other statutory punishment, commit such child to any state institution now or hereafter established for delinquents, or may commit such child to the county jail for any term not in excess of one (1) year, or he may suspend sentence and release on probation, under such terms and conditions as he may prescribe, and said court shall have the power to change the custody of such child or to terminate its jurisdiction over said child in the same manner as is provided in this chapter for the youth court." (Emphasis added)
In levying sentence on a criminal offender, a trial judge may proceed pursuant to Rule 5.13, Uniform Criminal Rules of Circuit Court Practice (1979), which provides as follows:
"Rule 5.13
BIFURCATED TRIALS
There may be bifurcated trials in all felony cases.
In all felonies in which the defendant is not subject to receive the death penalty the procedure may be as follows:
(1) There shall be a jury trial according to the constitution and law unless the jury is waived by the defendant.
(2) Upon conviction, or after a plea of guilty, there shall be a hearing before the trial judge as follows:
a. A presentence investigation shall be conducted and a report thereof shall be made, consisting of a complete record of the offender's criminal history, educational level, employment history, and when required by the court, his psychological condition, and such other information as the judge shall deem necessary. A copy of said report shall be delivered to the defendant for use by him and his attorney.

*1338 b. The state may introduce evidence of aggravation of the offense to which the defendant has been convicted or pleaded guilty.
c. The defendant may introduce in evidence any evidence he deems necessary to contradict or supplement any information contained in the presentence investigation report.
d. The defendant may introduce any evidence of extenuation or mitigation.
e. The state may introduce evidence in rebuttal of evidence of the defendant.
f. A record shall be made of the above proceedings. This record shall not be a part of the record on appeal but shall be maintained in the office of the circuit clerk of the trial court as a part of the record in that court.
In any case where the defendant is charged with a crime punishable by death, and the state seeks to impose the death penalty, the trial shall be conducted in accordance with Miss. Code Ann. §§ 99-19-101, 103 (Supp. 1978) and decisions of the Mississippi Supreme Court. See Jackson v. State, 337 So.2d 1242 (Miss. 1976), Washington v. State, 361 So.2d 61 (Miss. 1978), and cases following."
Those parts of the rule pertinent to the case sub judice are Subsections (c) and (d). After the jury returned a verdict of guilty as charged, the court recessed until 9:00 a.m. the next day for the purpose of pronouncing sentence. Upon Court convening again, the following transpired:
"BY THE COURT:

I understand the defendant wishes to present some matter for the Court's consideration in mitigation?
BY MR. WELCH:
Yes, Your Honor, we have a couple of things we would like for the record.
BY THE COURT:
I will advise you that in the sentencing process, I will consider all of the psychological data to which there has been testimony and the evaluations and those matters that have been testified concerning the school record and his evaluation, both in the hearing on the mental competency to stand trial, and also on the trial. If you have anything further, I'll be glad to hear you.
BY MR. WELCH:
For the record, we move the Court to defer sentencing until a later date to enable the defendant to present other testimony not available today with regard to sentencing, which, so far as the defendant knows, has not formerly been presented to the Court at any other time.
BY THE COURT:
I see no valid purpose that could be served by delaying the imposition of sentence, but I will give you an opportunity to put on any matter you have today.
BY MR. WELCH:
We would like to call Dr. Beth Wildman
DR. BETH WILDMAN, after first having been duly sworn, did on her oath testify as follows:
DIRECT EXAMINATION
BY MR. WELCH:
Q. Will you state your name, please?
A. Beth Wildman.
Q. Dr. Wildman, have you previously testified in this case?
A. Yes, I have.
Q. In order to avoid repeating, are you familiar with  have you had an opportunity to talk with Dr. Michael Whiddon?
A. Yes, I have.
Q. And in any other way, familiarize yourself with any programs or facilities that might be available to the Mississippi Department of Corrections with regard to the treatment or education of Robert Earl May, Jr.?
BY THE COURT:
Now, Mr. Welch, I thought I made myself very clear that I will hear testimony *1339 only so far as matters in mitigation. So far as alternatives available to the Court, I am thoroughly familiar with those. I have made an extensive investigation as to the possible alternatives the Court could take. I do not need to hear any further evidence on those things. I will listen to any matter that you have in mitigation that you care to present that has not already been presented, but insofar as conversations with Dr. Whiddon or anybody else concerning any program, those matters I have already thoroughly studied and I feel that I am aware of those alternatives that are available to the Court, and so I will hear any matter in addition to anything that has already been testified to in mitigation.
BY MR. WELCH:
May counsel address the Court?
BY THE COURT:
All right, but I want you to know that you are limited to that area as to matters pertaining to this individual defendant, pertaining to the sentencing.
BY MR. WELCH:
Your Honor, the defendant would submit to the Court information that was in the existence of the alternatives that are available to this Court to consider sentencing. There is further information based on the evidence before this Court that the defendant, Robert Earl May, Jr., has been tested and diagnosed as educable mentally retarded, and as such, would fall within the definitions of the Public Education Act for the mentally handicapped that is applicable to all programs in the State of Mississippi. Defendant's position is that information with regard to either the existence or the nonexistence of programs specifically designed for the educably mentally retarded within either the Department of Corrections, within the Youth Court, Juvenile facilities at Oakley, Columbia, is in evidence in mitigation. That is what we propose to present today. We would submit to the Court that that would be evidence in mitigation, and we ask the Court for permission to present that to the Court.
BY THE COURT:
I have already told you that I have made an exhausted study as to the alternatives available to the Court. I will hear those matters pertaining to this individual defendant. If you have nothing further to offer, then the Court is prepared to sentence the defendant.
BY MR. WELCH:
Just for the record, may counsel request, prior to sentencing, so that we might be able to assist the Court, sources of information the Court has or any pre-sentence investigation analysis that the Court may have to consider, we ask that be made a portion of the record and to be allowed to consider it before the Court passes sentence so that we might review and be able to inform the Court whether we have additional information, whether the information that the Court has in regard to this is accurate.
BY THE COURT:
I think a rather unusually exhausted study has been made of this defendant. He has been psychologically tested by several agencies of the State of Mississippi, including, of course, Dr. Whiddon at the Mississippi State Penitentiary. I have heard testimony of the various witnesses that have testified in the case here. The counsel has been furnished with a copy of a letter that Dr. Whiddon said, testified he mailed to the Court as to the psychological tests and evaluation of this defendant.
I have heard the testimony of Dr. Wildman, Miss Julie Epps; of Mrs. Rita Grice, speech pathologist at Hudspeth Center; Miss Debra Lovell, associate psychologist at Hudspeth Center; Mrs. Jackie Fleming, Director of the Jump Street program of the Hudspeth Retardation Center; Minnie Dallas, the teacher of the Jump Street program; Dr. Beth Wildman, psychologist at the Mental Health Center; Dr. Donald C. *1340 Guild, psychiatry chief with the Forensic Psychiatry at the Mississippi State Hospital at Whitfield; Dr. Charlton Stanley, who is a psychologist and also the various friends and acquaintances. They have testified that they knew the defendant prior to his arrest and all of those will be considered, their testimony will be all considered in the sentencing process. If you have anything additional that you care to present pertaining to the sentencing of this individual, I will be glad to hear it, but all of those matters have been considered and are a part of the record, and were, of course, furnished by the defense in a large measure.
BY MR. WELCH:
The only thing we have, Your Honor, to offer the Court at this time is evidence with regard to the act of availability of any program for the educably mentally retarded at the Department of Corrections at Oakley or Columbia, specifically for the particular defendant. We would offer evidence at this time only that the Jump Street program is the only existing program for juvenile offenders in the State which offers a specialized program for the educably mentally retarded, and that is all we wish to offer to the Court at this time.
DR. BETH WILDMAN STANDS ASIDE."
It is obvious that the trial judge was proceeding under Circuit Court Rule 5.13, supra, because counsel for appellant were informed that the judge would consider all the expert evidence introduced on the competency hearing and on the merits of the case, and that he would hear additional matters in mitigation of the sentence. The judge stated that he had made an exhaustive study and intensive investigation as to the possible alternatives the court could take. However, there is no record of the trial judge's knowledge of the alternatives mentioned in the sentencing hearing, and there is no way for this Court to determine what he did consider, and whether he abused his discretion under the statute and rule referred to.
We think the Legislature, in providing alternative methods of sentencing of minors, intended in cases involving special circumstances surrounding a minor defendant, that the trial judge consider seriously those alternatives enumerated in the statute and that the presence or absence of facilities for care of a minor offender be considered in mitigation of the punishment provided by statute. In our opinion, in addition to his consideration of the expert testimony, which became a part of the record on the sentencing phase, the trial judge should have placed in the record the sources and facts of his study and should have permitted appellant's counsel to introduce evidence of the presence or absence of facilities at Mississippi State Penitentiary for care of the appellant, and the availability of other institutions or facilities which could be utilized by appellant. Therefore, we remand the cause to the lower court for hearing further evidence of extenuation or mitigation and for sentencing not inconsistent with this opinion.
Counsel for appellant have contended throughout their argument that the trial judge and the district attorney were prejudiced against appellant on account of the publicity given the case when he first entered a guilty plea, was sentenced to the Mississippi State Penitentiary, and was permitted to withdraw the plea of guilty. They argue that the trial judge tried to vindicate himself as to the former guilty plea and sentence in the trial of the present case.
During the trial, including pre-trial and post-trial motions and discussions, there were instances of sharp conflicts between the trial judge and the attorneys for appellant. We think that the trial judge was patient and fair in the trial and that he afforded counsel the opportunity to present within the law every defense they desired. The appellant's contention that he was denied due process and a fair trial is not sustained by the record. We have carefully considered all assignments of error not specifically *1341 addressed in this opinion, and find that they are without merit.
AFFIRMED AND REMANDED FOR A SENTENCING HEARING CONSISTENT WITH THIS OPINION.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and HAWKINS, JJ., concur.
NOTES
[1] A special program, located at Hudspeth Mental Retardation Center, for the rehabilitation of mentally retarded juvenile offenders.