435 So.2d 1181 (1983)
Robert Earl MAY, Jr., Alias Bubba
v.
STATE of Mississippi.
No. 53707.
Supreme Court of Mississippi.
August 10, 1983.
*1182 Ronald Reid Welch, Jackson, for appellant.
Bill Allain, Atty. Gen. by Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
En Banc.
ROY NOBLE LEE, Justice, for the Court:
This is the second appeal of Robert Earl May, Jr. (Bubba May) from a sentence of twelve (12) years in the custody of the Mississippi Department of Corrections for armed robbery. On the present appeal, May presents the following contentions:
I. Sentence to 12 years in the custody of the Mississippi Department of Corrections is not "in the best interests of the child and the public welfare; and constitutes cruel and unusual punishment as applied to Robert Earl "Bubba" May, Jr.
II. Renewed sentence of twelve years in the Mississippi State Penitentiary, Department of Corrections, constitutes an abuse of discretion, a failure to follow the mandate of this Court and the law of this case, a violation of statutory law, and denies appellant equal protection and due process of the laws of this State and of the United States of America.
May was born April 9, 1964. On December 26, 1978, at the age of 14 years, he and three other black males, ages 17, 18 and 25 years, one of whom was armed with a shotgun, committed a robbery in Lincoln County, Mississippi. Upon indictment and arraignment, all four entered pleas of guilty and each was sentenced to twelve (12) years in the custody of the Department of Corrections. Public criticism resulted from May's sentence, due to his age, and the court granted his motion to withdraw the guilty plea and entered a plea of not guilty for him. After a trial on the merits, appellant was found guilty by a jury and again was sentenced by the court to twelve years.
That conviction and sentence were appealed to this Court and the judgment of conviction was affirmed, but the case was remanded to the lower court for hearing further evidence of extenuation or mitigation at the sentencing phase, since the record then before us did not indicate the judge's knowledge of the alternatives mentioned in the sentencing hearing. There was no way for this Court to determine what the trial judge considered.[1] In remanding the case, we said:
We think the Legislature, in providing alternative methods of sentencing of minors, intended in cases involving special circumstances surrounding a minor defendant, that the trial judge consider seriously those alternatives enumerated in the statute and that the presence or absence of facilities for care of a minor offender be considered in mitigation of the punishment provided by statute. In our opinion, in addition to his consideration of the expert testimony, which became a part of the record on the sentencing phase, the trial judge should have placed in the record the sources and facts *1183 of his study and should have permitted appellant's counsel to introduce evidence of the presence or absence of facilities at Mississippi State Penitentiary for care of the appellant, and the availability of other institutions or facilities which could be utilized by appellant. Therefore, we remand the cause to the lower court for hearing further evidence of extenuation or mitigation and for sentencing not inconsistent with this opinion. (Emphasis supplied) [398 So.2d at 1340].
The record presently before us indicates that May's counsel introduced extensive evidence, exhibits and documents bearing upon the matter of extenuation and mitigation of the sentence; that the trial judge had full and complete knowledge of the facts and circumstances surrounding appellant and of the alternatives available to him in imposing sentence; and that he seriously considered them. Excerpts from his finding and opinion follow:
So the Court is aware that there are some facilities within the State of Mississippi. There are public and private elementary and secondary schools in the county of the defendant's residence and throughout the State of Mississippi. The Court is aware that there are two State supported training schools located at Columbia and at Oakley, under the jurisdiction of the Department of Youth Services in Mississippi, and the Judge has visited each and observed their limited facilities. The Court is aware of the regional mental health services: the State Hospital at Whitfield; East Mississippi at Meridian, and the Ellisville State School at Ellisville, Mississippi; the North Mississippi Retardation Center at Oxford, and the Hudspeth Retardation Center at Whitfield. Each serves useful purposes and provides special facilities and treatment for those in their care.
The Court is aware that under the provisions of Section 43-21-159(3) of the Mississippi Code of 1972 as amended, known as the Youth Court Law, alternative sanctions are provided wherein it is provided that if any child shall be convicted by a Circuit Court, the Trial Judge, if he deems it for the best interest of such child and the public welfare, may, in his discretion and in lieu of other statutory punishment, commit such child to any state institution now or hereafter established for delinquents, or may commit such child to the county jail for any term not in excess of one year, or he may suspend sentence and release on probation under such terms and conditions as he may prescribe, and said Court shall have the power to change the custody of such child and terminate jurisdiction over said child in the same manner as is provided in that Chapter for the Youth Court.
This Court is aware the state institutions established for delinquents are at Columbia, Mississippi and at Oakley, and are under the jurisdiction of the Department of Youth Services. Section 41-21-605 of the Mississippi Code of 1972, as amended, being also a part of the Youth Court Law, provides that the training school may retain jurisdiction of the child until the child's 20th birthday but for no longer. The superintendent of a state training school may parole a child at any time he may deem it in the best interest and welfare of such child. The Court is aware of the Juvenile Justice and Delinquent Prevention Act and the Congressional passage of the 1980 Amendment thereto, with reference to removal of juvenile offenders from adult jails within 7 years.
* * * * * *
Armed Robbery is a very serious offense as evidenced by the penalties provided by the Legislature, and should not be depreciated by like sentences or sympathy for the offender. The seriousness of the offense is not based on the status of the person who commits the offense or the status of the victim, nor on the amount taken. The Trial Judge must determine under the Youth Court Law whether it is deemed in the best interest of the defendant and the public welfare to sentence the defendant to a state institution for delinquents or to the county *1184 jail for any term not in excess of one year, or to suspend the sentence and release on probation.
This Court does not find and does not deem that it is in the best interest of the public welfare to sentence this defendant to a state institution for delinquents or to the county jail or to suspend the sentence and release on probation, and hereby specifically finds.
In determining the sentence, the Court has considered not only the aspect of Parchman for the commission of the unlawful act, but the need for personal deterrence, that is, placing the defendant in custody for a term to prevent his repetition of the offense for the time in custody. The aspect of public deterrence has been considered, that is, to deter other persons from the commission of the same or similar offenses. The Court has also considered the need and time for rehabilitation so that the defendant may realize that he has done wrong and can become trained in more productive and lawful work. The Court has also considered other sentences in this and other districts of the State of Mississippi for the offense of armed robbery. Other defendants, black and white of approximately your present age of 17, have received the same or greater terms of sentence upon conviction of the offense of armed robbery.
No one connected with this Court bears any ill will toward you, Robert Earl May, but we cannot condone what you did. Bring the defendant around to be sentenced.
Under the assignments of error, May contends that the sentence to twelve years in the custody of the Mississippi Department of Corrections is not in the best interest of May and the public welfare and constitutes cruel and unusual punishment as applied to him. He also contends that the trial court abused its discretion in imposing sentence, violated statutory law, denied equal protection and due process under the laws of Mississippi and the United States, and failed to follow the mandate of this Court in imposing sentence.
The lower court found on the sentencing hearing involved here that it was not in the best interest of the public welfare to sentence appellant to a state institution for delinquents, or to the county jail, or to suspend the sentence and release him on probation. He also compared May's sentence to sentences of other young persons convicted of crime.
We stated in May v. State, supra, at 1337, citing Mississippi decisions, that this Court has held in many cases the imposition of sentence is within the sound discretion of the trial court and that we will not review the sentence so imposed, if it is within the prescribed limits of the statute. See Mansell v. State, 403 So.2d 871 (Miss. 1981); Henderson v. State, 402 So.2d 325 (Miss. 1981); Yazzie v. State, 366 So.2d 240 (Miss. 1979); and Ainsworth v. State, 304 So.2d 656 (Miss. 1975).
Those cases also stand for the proposition that such a sentence is not violative of statutory law or constitutional prohibitions. See White v. State, 374 So.2d 843 (Miss. 1979)[2] and Upshaw v. State, 350 So.2d 1358 (Miss. 1977).
The real thrust of the appeal is whether or not this Court mandated the lower court to impose a sentence less than twelve years. The cause was remanded to the lower court "for hearing further evidence of extenuation or mitigation and for sentencing not inconsistent with this opinion," since no complete record was made at the first hearing. We did not mandate the lower court to reduce or modify the sentence.
It is uncontradicted that in the present case, a record was made of everything desired by the State and May and that the lower court seriously considered them. The trial judge presiding at the *1185 hearing[3] has wide experience in such cases; he observed and heard the appellant, together with his witnesses, from the time of indictment through proceedings extending over a period of four years; and, from all the evidence, and his knowledge of the appellant, it was his judgment that the sentence of twelve years should be imposed. Under the law, as enacted by the Mississippi Legislature, construed by this Court, and now established precedent, we cannot say that the lower court committed reversible error in imposing the same sentence of twelve years.
The appellant was 14 years old when sentence was first imposed, and was 4 feet 10 inches tall, weighing 80 pounds. He is now 19 years old (April 9, 1964), is 5 feet 10 inches tall and weighs approximately 132 pounds. According to the record, he is neither the youngest nor the smallest person sentenced to the custody of the Mississippi Department of Corrections. Leatherwood was 17, Tokman was 18 and Bell was 18 when they were sentenced to death for capital murder, and the sentences were affirmed by a majority of this Court.[4]
Therefore, for the reasons stated, the judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and BOWLING and PRATHER, JJ., concur.
DAN M. LEE, J., specially concurs.
ROBERTSON and HAWKINS, JJ., dissent.
HAWKINS, J., concurs in dissent.
DAN M. LEE, Justice, specially concurring:
The dissent and concurring dissent raise excellent points that deserve thorough consideration.
If May were fourteen at this time the opinion of the majority would indeed be bad precedent by this Court. However, due to a previous reversal of the case and other delays, appellant is nineteen years old now (born April 9, 1964) and five feet, ten inches tall. I therefore join in the opinion of the majority because it can only be used as precedent for the sentencing of a nineteen year old youth.
ROBERTSON, Justice, dissenting:

I.
Robert Earl (Bubba) May, Jr., comes before this Court, again complaining of a twelve (12) year sentence imposed upon him by the Circuit Court of Lincoln County. On his first appeal, May v. State, 398 So.2d 1331 (Miss. 1981) ("May I"), we vacated a 12 year sentence and remanded, instructing the trial judge on resentencing to consider seriously, among other things, in mitigation of punishment "the presence or absence of facilities for care of a minor offender". May I, 398 So.2d at 1340.
With sincerest respect to my colleagues in the majority, I believe the trial judge once again has acted contrary to the mandate of the relevant sentencing statutes. Moreover, in my view the trial judge has acted inconsistently with both the spirit and the letter of the mandate of May I. I dissent.

II.
Defining crimes and prescribing punishments are exclusively legislative functions as a matter of constitutional law. This has long been recognized in Mississippi. In Gabriel v. Brame, Sheriff, 200 Miss. 767, 28 So.2d 581 (1947), the Court held
"that the authority to say what constitutes a crime, and what punishment shall be inflicted is in its entirety legislative question ..." [subject only to the strictures of the Eighth Amendment]. 200 Miss. at 773, 28 So.2d 582. [Emphasis added].
*1186 This rule has been affirmed in Howell v. State, 300 So.2d 774 (Miss. 1974), and Upshaw v. State, 350 So.2d 1358, 1360 (Miss. 1977).
"The exclusive authority of the legislature to determine crimes and fix the punishment therefor is without question." 300 So.2d at 780. [Emphasis added].
* * * * * *
"We hold that the authority to determine crimes and fix the punishment therefor is vested exclusively in the legislature ..." 300 So.2d at 781. [Emphasis added].
See also, Miss. Constitution Ann. §§ 2 and 33.
The following language from Howell opinion is only an inch or two too broad.
The power of a legislative body with respect to punishment for crime is practically unlimited, and is controlled only by constitutional provisions. Subject to this qualification, the legislature, may fix, and where a particular punishment is prescribed, no other may be imposed. (21 Am.Jr.2d at 542). 300 So.2d at 781.
In Mississippi, as elsewhere, it is the legislature  and the legislature only  which has the power to define crimes and prescribe punishments. Upshaw v. State, 350 So.2d 1358, 1360 (Miss. 1977).
Exercising its constitutional prerogatives, the legislature has prescribed a statutory sentencing scheme to which May is subject. That scheme is found in the interaction and combined reading of the general armed robbery statute, Miss. Code Ann. § 97-3-79 (Supp. 1982), the mandatory time served statute, Miss. Code Ann. § 47-7-3(d) (Supp. 1982), and the Youth Court Act, Miss. Code Ann. § 43-21-159(3) (Supp. 1982). This statutory scheme has been authoritatively construed in May I.

III.

A.
May I carefully considers the legislatively prescribed sentencing format applicable to the case of Robert Earl May, Jr. That format is found in a combined consideration of the General Armed Robbery statute, Miss. Code Ann. § 97-3-79 (Supp. 1982), the mandatory time served statute, Miss. Code Ann. § 47-7-3(d) (Supp. 1982), and the Mississippi Youth Court Act, Miss. Code Ann. § 43-21-159(3) (Supp. 1982). The General Armed Robbery statute authorizes a sentence of no less than three years up to a maximum of life imprisonment. The Youth Court Act provides that persons such as May may be tried as adults but that, upon conviction
"The trial judge, if he deems it for the best interest of such child and the public welfare, may, in his discretion, and in lieu of other statutory punishment, commit such child to any state institution now or hereafter established for delinquents, or may commit such child to the county jail for any term not in excess of one year, or he may suspend sentence and release on probation, under such terms and conditions as he may prescribe, ...." Miss. Code Ann. § 43-21-159(3) (Supp. 1982)
In May I we held that the trial judge must exercise his sentencing discretion within these legislatively prescribed limits. We held expressly, under the facts and circumstances of this case, that the legislature had mandated that the trial judge seriously consider the alternatives described in these statutes. We further specifically held that the trial judge must consider in mitigation of the punishment prescribed in the General Armed Robbery statute the presence or absence of facilities for the care of a minor offender. 398 So.2d at 1340.
I have no doubt that May I correctly and authoritatively construes the Youth Court Act. At the very least May I and its mandates to the trial court constitute the law of the case. See Continental Turpentine & Rosin Co. v. Gulf Naval Stores Co., 244 Miss. 465, 468-482, 142 So.2d 200, 201-208 (1962).

B.
The dispositive question on this appeal is whether the trial court faithfully adhered to the mandate of May I. That mandate, to be sure, left the trial judge with considerable *1187 discretion. In no uncertain terms, however, May I placed limitations upon that discretion, the two most important of which were that (1) the trial judge should consider seriously the alternatives enumerated in the statute and (2) that the presence or absence of facilities for the care of a minor offender should be considered in mitigation of punishment.
Looking first to the May I mandate that the trial judge consider sentencing alternatives, I find no fault. The trial judge displayed a keen awareness of the alternatives available to him and he described those fairly for the record. I accept on faith that he gave these alternatives "serious" consideration.
On the second and more specific portion of the May I mandate, however, I find error. The trial court's purported compliance here began with the receipt of substantial testimony on "the presence or absence of facilities for the care of a minor offender". That testimony related to Parchman as well as other state institutions, and to private facilities both inside or outside of the state of Mississippi. He considered testimony received at the September 18, 1981, hearing, as well as that received at the first hearing. The trial judge stated, "I have listened very carefully to the testimony that has been given here today ..., and I have reviewed all of the testimony that was taken ... [at the previous hearing]"... . "I have considered all of them [evidence in extenuation or mitigation of alternatives of sentence] and read all the material that has been furnished to me."
The trial judge concluded by stating:
"For the safety of the law abiding members of our society, of all races, robbery by firearm just cannot be tolerated and is not going to be condoned. Armed robbery places the robber and the victim in great danger of death or great bodily harm.
So having considered all of the alternatives, having considered the information furnished to me and all the testimony that has been received, I deem that it is not in the best interest of the public welfare that alternative sentence be imposed, and I do hereby sentence you to 12 years in the custody of the Department of Corrections of the State of Mississippi, with the hope and direction that the Department of Corrections places you in such facilities as may become available so that you may be trained in useful occupation, and that you can pursue educational opportunities insofar as your capacity may be; and it is my hope that you will be a good prisoner and will take advantage of those opportunities that will be offered to you to learn a trade, to further your education so that when you are dismissed from the State Penitentiary or from the custody of the Department of Corrections, that you will be able to pursue a productive law abiding occupation and make a good law abiding citizen.
That will be your sentence and you are committed to the Sheriff for the fulfillment thereof."
Without doubt the trial court seriously considered the presence or absence of facilities for care of a minor offender. But May I directed more. May I directed that the presence or absence of facilities be considered "in mitigation of punishment". 398 So.2d at 1340.
May I necessarily was premised on the fact that availability of facilities had not been considered at the first sentencing hearing. At the second sentencing hearing, substantial evidence was offered respecting this issue. In my view all of that evidence suggests mitigation of sentence. I find none which suggests to a rational sentencing authority an enhancement of punishment.
In my view, the trial court failed to comply with this portion of the May I mandate on this rationale:
(a) If the sentence originally imposed upon May was 12 years, and
(b) If this Court found that the presence or absence of facilities for care of a minor offender had not, consistent with legislative mandate, been adequately considered before *1188 the first sentence had been imposed, and
(c) If this Court vacated and remanded with instructions that the trial court seriously consider the presence or absence of facilities for the care and custody of a minor "in mitigation of the punishment provided by statute," and
(d) If the trial court were then instructed to hold a further hearing for "further evidence of extenuation or mitigation and for sentencing not inconsistent with this opinion". 398 So.2d at 1340, and
(e) If at the hearing all of the evidence suggested mitigation of sentence, while no evidence suggested to the contrary  the state having offered no new evidence, and
(f) If at the conclusion of the second hearing the trial court imposed the same 12 year sentence as it had previously imposed (and this Court had vacated), then the conclusion is inescapable: the trial court has failed to comply with the instructions of this Court. Accordingly, the sentence imposed upon May ought once again be vacated. Because the majority sees the matter otherwise, I respectfully dissent.
HAWKINS, J., joins this dissent.
HAWKINS, Justice, concurring in dissent.
I concur in the dissent of Justice Robertson and fully agree with everything he stated.
In deference to the majority and the Circuit Judge, the following observations are added.
May is a sixth grade drop-out, and a borderline case of mental retardation. When he was 14 years old, he accompanied three other black males in the robbery of a fireworks stand. Two wore stocking masks; May and the others were barefaced. Thirty-seven dollars was taken from the proprietor. All were caught shortly after the robbery, and all were older than May.[1]
In May I, May v. State, 398 So.2d 1331 (Miss. 1981), we stated:
We think the Legislature, in providing alternative methods of sentencing of minors, intended in cases involving special circumstances surrounding a minor defendant, that the trial judge consider seriously those alternatives enumerated and that the presence or absence of facilities for care of a minor offender be considered in mitigation of the punishment provided by statute. [Emphasis added]. 398 So.2d at 1340.
On remand, the State offered no evidence on the issue.
The defense offered the following on remand:
Two Parchman witnesses, James Upchurch, Deputy Warden, and Dr. Jiovanni Croce, Director of Psychiatric Services, testified. Their testimony, coupled with the evidence adduced at the first hearing, established without doubt that the Department of Corrections (MDC) maintained no programs or facilities at Parchman in any way geared to the special needs of borderline retarded youths. At Parchman MDC could do little more than warehouse youths such as May, hoping against hope that they would not be victimized by older, more experienced and more aggressive prisoners.
Alternatives were offered by the defense. The defense experts recommended that May be placed in "a family type setting". The parents in such a setting would not be typical foster parents; rather, they would be persons with special training and skills. It would be their task to provide behavioral, social, educational and vocational nurture and guidance to the youth. The defense experts described such programs in the States of Georgia, Pennsylvania, and Massachusetts. A review of the record, however, makes it glaringly apparent that there are no such programs available in Mississippi.
In spite of this testimony, the Circuit Court again imposed a 12 year sentence.
*1189 Having been sentenced to 12 years for armed robbery, May will not be eligible for parole until he has served at least ten years.[2] He will thus be at least 24 years of age when he is released from prison.
No one disputes the necessity for penitentiaries. We delude ourselves, however, if we think imprisonment for such a long period offers any probability of improvement of the individual. Statistics indicate quite the reverse. As many law enforcement officers have put it in the vernacular: "Parchman gives a man a Ph.D. degree in crime." More often, the penitentiary does not rehabilitate a person, it simply postpones the release upon society of a much worse criminal than when he entered.
The Legislature recognized this over forty years ago when the Youth Court Act was first enacted. 1940 Miss. Laws Ch. 300. It was to avoid brutalizing a youth, as well as to make a positive effort towards rehabilitating the young, that prompted the legislation.
In this case no attempt is going to be made to use the State's services, or any others that are available, in such a manner that this virtually feebleminded young man has any chance to be helped to become self-supporting and law abiding. The plain intent, if indeed not the mandate of the Legislature, has been obtusely ignored.[3]
I see no infringement on the authority which should be given a Circuit Judge in sentencing to require the Youth Court Act providing alternatives in youthful offenders be seriously considered. Most Circuit Judges in my experience have been profoundly grateful for this law. In my view, it is a travesty of the Youth Court Act to assert that what we are affirming can be in the interest of society, much less May.
What chance are we offering May, or society, of his eventual rehabilitation? The one hope he, or society had, has now been removed by us. I would remand this case to the Circuit Judge instructing him to give meaningful consideration to our opinion in May I and to consider viable sentencing alternatives.
NOTES
[1] May v. State, 398 So.2d 1331 (Miss. 1981).
[2] Life sentence without eligibility for parole, imposed upon a 16-year-old youth convicted of armed robbery, was not cruel and unusual punishment in violation of the Eighth Amendment rights.
[3] Honorable Joe N. Pigott.
[4] Leatherwood v. State, 435 So.2d 645 (Miss. 1983); Tokman v. State, 435 So.2d 664 (Miss. 1983); and Bell v. State, 360 So.2d 1206 (Miss. 1978).
[1] One was 17, another 18, and another 25. See May v. State, 398 So.2d 1331 (Miss. 1981) for detailed statement of facts and May's mentality.
[2] Miss. Code Ann. § 47-7-3(d) (Supp. 1982), provides that a person sentenced to prison for armed robbery for a term longer than ten years is not eligible for parole until he has served at least ten years.
[3] More regretably, the harm was done four years ago when the Circuit Judge did not see fit to consider alternatives to 12 years in the penitentiary. His chances for improvement may have decreased with maturity. It is the precedent of this case which is disconcerting.