On December 28, 1990, twenty-two days after her fourteenth birthday, Darla Jo Swinford was present when her eighteen year-old boyfriend shot and killed a young man whom Darla had dated. Darla was eventually tried on the charges of conspiracy to commit murder and murder. She was acquitted of the former and convicted of the latter. Without the benefit of a presentence report, Judge George Carlson imposed a life sentence with the following statement:
 I'm aware of the fact and have had to deal with, unfortunately had to deal with a fair number of cases of persons 14 years, 15 years of age, who were tried or pled guilty to capital offenses and then had to consider those sentencing alternative[s], all the alternatives set out by statute and by case law, certainly the May v. State case, and I'm aware of those cases and I'm aware of the requirements.
 In this particular case, I'm satisfied that the defendant having been indicted and tried as an adult, found guilty of the crime of murder, based on the jury verdict, the Court must impose the mandatory sentence of life imprisonment as set out by statute, recognizing again the alternative considerations that can be made as set out in May v. State and other cases.
The court then released Swinford on bail pending appeal.
The question which divides us is whether the trial court complied with this court's requirements with reference to Miss.Code Ann. § 43-21-159(3) (1972) as last pronounced in Erwin v.State, 557 So.2d 799 (Miss. 1990). That statute empowers a circuit judge, when faced with the prospect of sentencing a juvenile as defined in the Youth Court Act, to consider commitment to the county jail for one (1) year, suspension of sentence and release on probation or, commitment to the Department of Corrections or imposition of a fine as though such child was an adult, under such terms and conditions as he may prescribe. Miss. Code Ann. § 43-21-159(3) (Supp. 1993).
In Erwin, we reversed a sentence of a seventeen year-old on grounds that it exceeded *Page 919 
his life expectancy. Erwin, 557 So.2d at 799. For guidance on remand we recounted our treatment of the juvenile sentencing statute from May v. State, 398 So.2d 1331, 1338 (Miss. 1981), through Reed v. State, 526 So.2d 538, 541 (Miss. 1988). Recognizing that we were dealing with the serious offense of rape and kidnapping we observed that:
 [w]hile it seems most unlikely that the Court would suspend the sentence, impose a fine, commit the child to the county jail for a term which cannot exceed one year in a case which even approaches the callous brutality involved in this case, it is, nevertheless, possible that under different circumstances and with extenuating factors involved, a court might utilize one of the alternatives set out. For that reason, and so that this Court may make appropriate evaluation of the discretion exercised by the trial judge, it is appropriate for the trial judge to see to it that the record clearly reflects the reasons which prompted him to exercise his discretion in utilizing or not utilizing the alternatives afforded. The trial court should let the record disclose the facts which prompted the exercise of his discretion either way.
557 So.2d at 802-803.
In Reed we faced a murder conviction of a seventeen-year old.Reed, 526 So.2d at 538. While we approved the actions of the trial judge, noting that he had reviewed extensively twenty-four letters submitted by acquaintances of the defendant and specifically took the defendant's "tender years" into consideration, we left little doubt that the provisions of the statutes and our pronouncements apply even to the crime of murder. Id. at 541. Reed predates Erwin where we announced the requirement that "the record disclose the facts which prompted the exercise of his discretion either way." In my view, the record here simply does not disclose that.
Here we have a murder conviction based almost entirely upon a letter written by the fourteen year old girl, while she was in jail to the eighteen-year old who did the killing in which she relayed the following:
. . . I told my attorney that I new (sic) what was going to happen because I could not take the pain any more and plus Keven (sic) called and told them it was going to happen and he said he heard me and you talking about it on the phone so I had to tell the truth so I'm looking for about six months to a year in jail but I thank (sic) I deserve it for what I put Jammie (sic) thrue (sic) and for what me you and Richard did to him. . . .
Richard is the third accomplice. He gave equivocal testimony that he and Darla knew that Jamie would be killed but never really placed Darla in such a discussion. It is clear that Darla agreed to bring Jamie to a predetermined spot. Another witness, who supplied the gun, testified that George, the eighteen year-old shooter, had said he would kill Jamie but not in a manner in which the witness took him seriously or in the presence of Darla. The only connection between Darla and a prearranged intent to kill is supposedly a telephone conversation in which Darla was allegedly on the other end, but no witness related positive statement of an intent to kill during that conversation. Richard, the only witness to the telephone conversation, from George's end, testified that he gathered that it was on for Jamie to be brought to the spot and to be killed "I guess." There was also testimony concerning Jamie threatening to kick George's "a. ."
It seems that sometime in late November or early December Richard, 19, and George went to Florida on "vacation." They encountered some difficulty with the law there. They returned to Southhaven near Christmas. George learned that Darla, with whom he had lived off and on for two years at her mother's house and with whom he had a sexual relationship, had been dating the victim. There was a discussion back and forth with Darla in which she denied sexual relations with Jamie but related Jamie's threat to kick George's "a. ." Eventually, George got Darla to arrange a meeting with Jamie. In the meantime George had been talking to others about killing Jamie. According to Chris, who loaned the weapon, George said he would use it to scare Jamie. On the fateful day, Jamie arrived driving his car with Darla as a passenger. After a 25-30 minute conversation George shot Jamie and killed him. George, Darla, and Richard then *Page 920 
drove to Florida where they were arrested two days later. Darla had with her sufficient clothes for a trip to Florida and most of the evidence suggests that she intended to go. Her trial testimony was, however, that she had packed clothes to spend two days with her mother and she was on her way back with those clothes and others that she had taken to her mother's to be washed.
None of this is to attack the sufficiency of the evidence. I agree with the majority in rejecting that contention. The letters and the inconsistencies in the stories of the principals is sufficient in my view to sustain the verdict, despite the fact that the jury found her not guilty of conspiracy. If the evidence is sufficient, the fact that other crimes sustainable by the same evidence were not found does not detract from the verdict. U.S.v. Gordon, 780 F.2d 1165 (5th Cir.Miss. 1986); Johnson v.State, 491 So.2d 834 (Miss. 1986). I relate the circumstances as I view them from the record only to provide context.
In that vein, I have found nothing in the record which tells us any more about Darla than that related above. In my view, Erwin
requires that we know more about her. More importantly, Erwin
requires that we know what facts the court relied upon to exercise its discretion to reject the dispositional alternatives. What we have is a recitation of awareness of the alternatives and that a guilty verdict was returned. These are givens. If Erwin
requires anything at all, it requires some rationale as to why the statutory alternatives are not appropriate, and factual support for that rationale.
I would affirm the conviction, and remand to the circuit court for additional findings or a new sentencing hearing. Failing that, I would give Erwin a decent burial by saying explicitly that it is overruled.
HAWKINS, C.J., and SULLIVAN, J., join this opinion.