## Eatman v. State.

(Division B. March 5, 1934.)

[153 So. 381. No. 31145.]

W. W. Venable, of Clarksdale, and C. B. Cameron, of Meridian, for appellant.

**W. D. Conn, Jr.,** Assistant Attorney-General, for the state.

**Griffith, J.,** delivered the opinion of the court.

Appellant was indicted in Coahoma county for burglary, and upon his trial was convicted and sentenced to the penitentiary for ten years. After his arrest and pending trial, a petition for a writ of habeas corpus was filed seeking to have the accused returned to the East Mississippi Insane Hospital. From an adverse judgment on that petition, an appeal was taken to this court, which resulted in an affirmance, Dr. M. J. L. Hoye, Supt., v. State, 152 So. 644. The opinion there states most of the facts bearing upon the question now before us.

In response to the indictment appellant interposed the plea, among others, that, at the time of the commission of the offense charged, he was insane. At the close of all the evidence on this and the other issues the trial judge instructed the jury to disregard all the testimony offered with reference to the insanity of the accused, and the present appeal raises the sole question whether that issue should have been submitted to the jury.

Every lay witness, except one, having had ample opportunities to closely observe the accused during the last year, was without doubt of his sanity. Two witnesses were introduced who spoke of some peculiarities

in the conduct of the accused noted on isolated occasions, but even these two witnesses would not commit themselves to the conclusion that the accused was actually insane. Peculiarities of conduct on occasions do not amount to proof of insanity, else, in the judgment of many men, most of the people, other than themselves, would be insane. Every expert witness introduced, or whose written report admitted in evidence, based upon a personal examination shown to have been taken in connection with a detailed personal history of the accused, maintains the opinion that the accused is and was a psychopathic delinquent without psychosis; that is, that he has the capacity or ability to distinguish right and wrong, but is deficient in inhibitory powers. The only witness who asserted that the accused was and is insane is his father, who admitted on cross-examination that his opinion or conclusion that the accused was unable to distinguish between right and wrong was based upon the fact that he continued and had continued over a long period of time to commit numerous criminal offenses apparently without any sensible regard to the consequences.

In this state, as generally in the several states, the rule of law is that the test of criminal responsibility is the ability of the accused, at the time he committed the act, to realize and appreciate the nature and quality thereof—his ability to distinguish right and wrong. Smith v. State, 95 Miss. 786, 49 So. 945, 946, 27 L. R. A. (N. S.) 461, Ann. Cas, 1912A, 23. And the defense of want of inhibitory powers, or as otherwise expressed, the defense of irresistible or uncontrollable impulse was declared in that case to be unavailable, unless the uncontrollable impulse spring from a mental disease existing to such a high degree as to overwhelm the reason, judgment, and conscience, in which case, as the court adds, the accused would be unable to distinguish the right and wrong of a matter.

The courts place the general rejection of the defense of uncontrollable impulse upon practical grounds. Said our court in the Smith case, supra: "It is known among medical writers as lesion of the will. Its peculiarity is said to be that, while the mental perception is unimpaired, the mind is powerless to control the will; that while its unhappy subject knows the right, and desires to pursue it, some mysterious and uncontrollable impulse compels him to commit the wrong. This kind of insanity, if insanity it can be called, though sometimes recognized by respectable courts, and still oftener, perhaps, by juries seeking an excuse to evade the stern dictates of the law, is properly rejected by the authorities generally. The possibility of the existence of such a mental condition is too doubtful, the theory is too problematical, and too incapable of a practical solution, to afford a safe basis of legal adjudication. It may serve as a metaphysical or psychological problem to interest and amuse the speculative philosopher, but it must be discarded by the jurist and the lawgiver in the practical affairs of life."

And further along in the opinion, the court, in quoting from another court (People v. Hubert, 119 Cal. 223, 51 Pac. 329, 331, 63 Am. St. Rep. 77), approves the following language: "It must be held that, conceding that the act was the offspring of an irresistible impulse because of mental disease, still the defendant must be held responsible if he at the time had the requisite knowledge as to the nature and quality of the act and of its wrongfulness. We do not know that the impulse was irresistible, but only that it was not resisted. Whether irresistible or not must depend upon the relative force of the impulse and the restraining force, and it has been well said to grant immunity from punishment to one who retains sufficient intelligence to understand the consequences to him of a violation of the law may be to make an impulse irresistible which before was not." It is interest-

ing in connection with the above language to note that, in the cross-examination of Dr. Clark, the medical director of the state insane hospital, when he was pressed by counsel for the accused to commit himself in some meas ure to the proposition that, because the accused over a period of years did not resist the impulse to commit crime and had apparently no regard for the consequences then this was insanity, the doctor consistently held to replies the effect of which, when analyzed, was that there was no practicable or dependable way to tell in this case whether the accused was in fact unable to resist the criminal impulses or whether rather the result was out of the perversity or no real effort to resist. Thus the pertinency of another observation in the Smith case, supra, where the court said: ''The law is not an exact science. Many of its rules are imperfect, and it may be that the one now under consideration is imperfect, but the adoption of any other test of criminal responsibility would be impracticable, and would result in opening wide the door for the escape of criminals on the ground of uncontrollable impulse, irresistible inclination, etc.''

All the evidence here is that the accused has and had the capacity to understand and realize the right and the wrong. The only substantial evidence to the contrary is his long-continued and persistent commission of the wrong. If the issue had been submitted to the jury, it would have been to allow them to adjudge the accused insane because of his uncontrollable impulse or irresistible inclination to commit crime after crime; in other words, it would be only to allow a jury the opportunity by its verdict to change the law of the land; and, as recently remarked by us in Dow v. Town of D'Lo, 152 So. 474, 475, ''it is not permissible, by the device and under the guise of a finding of facts by a jury, that the law of the land shall be altered or amended.''

Affirmed.