ROBERTSON, Justice:
The appellant, Carl Murphy, Jr., was jointly indicted, along with Carroll Rogers and Jimmy Deaton, for grand larceny. The charge against Carroll Rogers was dismissed, and a severance was granted as to the defendant Jimmy Deaton. The appellant was tried and convicted, and sentenced to serve five years in the Mississippi State Penitentiary.
There is merit in the following two assignments of error: (5) The Court erred in overruling the motion of defendant-appellant for a mistrial based upon the unwarranted and unfounded cross-examination of defendant-appellant by the State which was highly prejudicial and inflammatory, as shown by the court reporter’s transcript; and (6) The court erred in granting instruction No. 2 for the State. Because these constituted fatal errors, we reverse and remand for a new trial.
Davis Gin and Farm Supply Company in Bruce, Mississippi, was broken into on the night of February 22, 1968, and thirty five-gallon cans of Treflan were stolen and carried away.
Woodrow James, the manager of the warehouse of Davis Gin and Farm Supply, identified four cans of Treflan, which were introduced as exhibits as being part of the thirty cans that were stolen. He positively identified these four cans by means of a customer stock number, “6-0-K,” assigned to Davis Gin and Farm Supply by Adkin-Phelps Feed and Chemical Company, Greenwood, Mississippi, the seller.
Doyle Baker, manager of Adkin-Phelps, testified that Davis was the only customer assigned the number “6-0-K” and that Davis would keep this number as long as Davis Gin and Farm Supply was a customer of Adkin-Phelps.
W. T. Robinson, a farmer and dairyman, testified that he bought five five-gallon cans of Treflan from the appellant for $87.50 each, and five five-gallon cans of *756 Treflan from Jimmy Deaton for $50 each. These ten cans were stored in a bedroom with seven other cans carried over from 1967. The five cans purchased from Dea-ton were sold to Gibson Lee Billingsley. Two of the cans sold to Billingsley were picked up by B. M. Duncan, an investigator with the Mississippi Highway Patrol, at Billingsley’s home and were received in evidence as Exhibits A and C.
W. T. Robinson sold two of the cans of Treflan purchased from appellant to Billy Robinson, and these were picked up by the sheriff of Monroe County at Billy Robinson’s home and were introduced into evidence as Exhibits B and D. Exhibits A, B, C and D all bore the customer’s stock number, “6-O-K,” assigned to Davis Gin and Farm Supply.
It would appear that the court was in error in receiving into evidence Exhibits A and C because these two cans were recovered from Billingsley’s home, and Robinson testified that he sold Billingsley only Treflan that he had purchased from Jimmy Deaton. However, this was not a fatal error because the two cans, Exhibits B and D, were identified as part of the five cans purchased from the appellant, and their retail value was $310.00.
The appellant testified that the five cans of Treflan that he sold to W. T. Robinson had been pawned to him by one Wade Luther, who was killed in an automobile accident shortly before the trial of appellant. He testified that he loaned Luther $75 on each can of Treflan and that he advised Luther that he had two weeks in which to redeem the Treflan. The appellant also testified that he was in jail in Marks, Mississippi, the night of February 22, 1968, the night the Treflan was stolen.
There was no direct evidence against the appellant; all of the evidence was circumstantial; and the jury apparently found the appellant guilty because of the inference of guilt arising from possession of recently stolen property, and the record of previous convictions against the appellant.
The appellant freely admitted that he had “paid a lot of liquor fines” and that he had been convicted of minor traffic violations and simple assault, but when the district attorney asked: “Were you in Cause Number 16496, Lee County, Mississippi, on November 1963, convicted of the charge of murder,” the appellant replied: “No, sir.”
The jury was excused, and the following colloquy took place:
THE COURT: The only thing the Court wants to know is he answered the question “No”, I believe, didn’t he ?
MR. SCRIBNER: Yes, sir.
THE COURT: What sort of record do you have of this ?
MR. LITTLEJOHN: Your Honor, I don’t know whether he was convicted or not. He was tried, as I understand it, for the charge.
MR. SCRIBNER: He has never even been tried for murder.
THE COURT: Now, if you know of a conviction, the Court will let you ask about convictions, but this is highly prejudicial and let’s don’t go into these things such as highly prejudicial things there. All right. Show the jury back into the box.
MR. SCRIBNER: I would like to make a Motion at this time.
THE COURT: Let the jury wait just a minute out there.
MR. LITTLEJOHN: We will withdraw the question.
MR. SCRIBNER: On the basis of the questions as asked on it, we move for a mistrial. This is very damaging and prejudicial, and we feel that this is prejudicial to the extent that it should be sufficient for us to be granted a mistrial. It is totally unwarranted to bring in such when the District Attorney should have known.
*757 THE COURT: The Motion is overruled. Show the jury back into the box.
When the jury returned to the jury box, the court instructed the jury:
“Gentlemen of the jury, just before the Court had you retire the question was asked this Defendant on cross examination if he wasn’t convicted in a certain cause number of the crime of murder, and he answered it, ‘No’, and the Court in going into the matter states to the jury that you will remove anything relative to any question about murder from your mind and instruct you to totally disregard it.”
In spite of this admonition to the jury, we feel that this cross-examination of the appellant by the district attorney was highly prejudicial, damaging and unwarranted, and we feel that this tipped the scales against the appellant.
The appellant urges that the court was in error in granting Instruction No. 2 for the State, which was:
“The Court instructs the Jury for the State of Mississippi that when two or more persons enter into a combination or federation to accomplish some unlawful object, any act done by any of the participants in pursuance of the original plan and with reference to the common object is, in contemplation of law, the act of all.”
In the trial of the appellant no testimony was introduced that would warrant this instruction.
In view of the fact that the only evidence against the appellant was entirely circumstantial, we feel that the cross-examination of the appellant about a conviction of murder, when there had never been such a charge against him and no proof introduced, unduly and prejudicially influenced the jury against the appellant.
The granting of an instruction “on combination or federation to accomplish some unlawful object” was damaging and prejudicial to the appellant because there was testimony that Jimmy Deaton (at first a co-indictee) had sold five cans of Tref-lan to W. T. Robinson, who in turn sold this batch of Treflan to Gibson Lee Bil-lingsley. Even though these five cans were not shown to be connected with the appellant in any way, two of them were erroneously introduced into evidence against the appellant, in spite of the fact that a severance had been granted Jimmy Deaton and only the appellant was being tried. This combination of circumstances made the granting of this instruction a fatal error.
Because of these two fatal errors, this case is reversed and remanded for a new trial.
Reversed and remanded.
GILLESPIE, P. J., and JONES, BRADY and INZER, JJ., concur.