The defendant, William D. Myrick, was indicted, tried and convicted in the Circuit Court of the Second Judicial District of Jones County for the murder of James Phillips, his son-in-law. The defendant pled insanity as a defense.
At the time of the homicide, defendant's daughter, Diane, and James Phillips had been married for approximately 3 years. Phillips was in the Army but was home on emergency leave due to the illness of his father. The young couple was visiting in the defendant's home while in Mississippi.
On the night of the homicide Phillips and his wife attended a party and returned to the defendant's home at a late hour. While they were preparing to retire the defendant came into their bedroom, sat on the bed and engaged them in a friendly conversation for about half an hour. During the course of that conversation the defendant produced some pieces of cheap costume jewelry which he maintained were valuable diamonds and rubies. Shortly thereafter the defendant left the bedroom, admonishing the young couple to get some sleep.
Diane, the only eyewitness to the killing, testified that some time later she was awakened because her husband was restless. She observed the defendant enter the bedroom whereupon she told him to return to bed and he replied, "I am going to bed right now," at which point he departed. Shortly thereafter the defendant was heard running through the house. Diane testified that a light was burning in the kitchen and in the dim glow thereof she saw the defendant, pistol in hand, standing at the foot of the bed. Both Diane and Phillips sat up in bed; Diane screamed, the gun discharged and Phillips fell back mortally wounded.
Immediately after the shooting the defendant ran into the kitchen, closely followed by his distraught daughter who slapped him lightly on the face and asked him if he knew who she was. After a brief interval, the defendant replied affirmatively to that query, and when asked if he knew what he had done, said "Yes, I know what I have done. I killed Pee Wee. He was trying to beat you to death." Diane testified that the defendant ran back into his own bedroom cursing the decedent and screaming that Phillips should not have tried to beat Diane to death and that Phillips had been trying to shoot him (the defendant) with a gun. Diane also heard the defendant exclaim that he had killed Pee Wee before Pee Wee could kill him. The defendant apparently calmed down a bit, and when Diane told him that she was going to call her mother to obtain some assistance he replied, "Okay. Go call her and tell her to come see about him, but he is dead. I shot him."
Other evidence adduced during the trial revealed unconventional behavior on the part of the defendant. The defendant's younger daughter, Pam, testified that, early on the night of the shooting, the defendant had shown her some items of inexpensive costume jewelry and claimed that they were authentic jewels. After she retired the defendant requested her to get out of bed two times, first, to prepare his supper, and, later, to fill a bath tub with water for his bath. The defendant's elderly father *Page 261 
testified that the defendant came to his home on the eve of the shooting and discussed the cutting of pulpwood from their jointly-owned land. The elder Myrick testified that the defendant did not seem to understand that they were being paid for the wood; he was calm but talking "off balance". It is not clear from the evidence when defendant visited his father because the defendant's wife testified that the defendant arrived home on the fateful evening and proceeded at once to his garden area and was in and about the home until she departed to her work. Apparently the defendant engaged in no unusual behavior up to the time Mrs. Myrick left for work at 10:30 p. m. Further, the ambulance driver who answered the emergency call to the Myrick home testified that he observed the defendant, but did not see any abnormal behavior.
The defendant testified in his own behalf and claimed that he did not remember shooting Phillips. The defendant stated that after he returned home from work and fed his hogs, he drank one can of beer and then went to sleep. The next thing he remembered after lying down was seeing Phillips standing at the foot of his bed, pointing an automatic shotgun at him and saying, "I am going to kill you." The defendant remembered removing his pistol from between the mattresses of his bed but did not remember anything else until he found himself in custody and on his way to jail. He testified that he had never been angry or had a fight with his son-in-law and that he thought Phillips was a good, Christian boy.
The defendant's principal assignments of error are: (1) the trial court refused to grant a mistrial after sustaining an objection to improper questioning by the prosecutor of a defense witness; (2) the state failed in its duty to establish the sanity of the accused beyond all reasonable doubt after the question of sanity had been raised so as to engender doubt; and (3) the court erred when it refused to grant Instruction No. 5 requested by him.
The first assignment of error is predicated on a question asked the defendant's father by the district attorney about past behavior of the defendant as follows: "Was he acting queer or unusual when he took the rifle and shot at his own brother and you had to commit him to Whitfield back here some time ago ?" The court sustained counsel's immediate objection and admonished the jury to disregard the question since it inferred the commission of another crime. The defense thereupon moved for a mistrial on the theory that the court's admonition was insufficient to remove the question's taint from the minds of the jurors, but the trial court overruled the motion.
The defendant vigorously argues that the prosecutor's question inferred a prior unprosecuted and unpunished crime by the defendant and as such was prejudicial to the defendant. The general rule which we follow holds that when an objection to a question is sustained and the jury is admonished to disregard the question there is no reversible error. See Herron v. State, 287 So.2d 759, No. 47, 589 (Miss., decided Jan. 7, 1974) and the numerous cases cited therein. However, we have reversed some convictions because of prejudicial cross-examination by prosecutors. In Murphy v. State,226 So.2d 755 (Miss. 1969) we held that a question propounded to the defendant about a conviction of murder, when there had never been such a charge against him and no proof had been introduced, un-duly and prejudicially influenced the jury against the defendant, especially in view of the fact that the evidence against the defendant was entirely circumstantial.See also Barlow v. State, 233 So.2d 829 (Miss. 1970); Thompson v. State, 84 Miss. 758, 36 So. 389 (1904).
In the instant case the question propounded by the prosecutor was not so *Page 262 
prejudicial to the defendant that the court's admonition was ineffective to remove any taint caused thereby. This is especially true in light of the fact that the defendant's defense was insanity. Part of the question was directed to past events which might have shed some light on whether defendant had a previous history of a mental disease. We hold that the court's admonition to the jury to disregard the question was sufficient to remove any prejudicial effect to the defendant and it was not error for the trial court to overrule the defendant's motions for a mistrial and a new trial on this issue.
In his second assignment of error, defendant contends that the state failed in its burden of proof on the issue of sanity. The defendant cites as authority for this contention Cunningham v. State, 56 Miss. 269, 31 Am.Rep. 360 (1879) where we held:
 We think the true rule is this: Every man is presumed to be sane, and, in the absence of testimony engendering a reasonable doubt of sanity, no evidence on the subject need be offered; but whenever the question of sanity is raised and put in issue by such facts, proven on either side, as engender such doubt, it devolves upon the State to remove it, and to establish the sanity of the prisoner to the satisfaction of the jury, beyond all reasonable doubt arising out of all the evidence in the case. . . . (56 Miss. at 276).
The rule stated in Cunningham has been followed in many cases. See Herron v. State, 287 So.2d 759, No. 47, 589 (Miss., decided Jan. 7, 1974) and cases cited therein. Under the rule, when the issue of sanity is raised and evidence introduced, either by the state or the defendant, that engenders doubt as to sanity, the state must prove the sanity of the accused to the satisfaction of the jury beyond all reasonable doubt, thus making the sanity of accused a question for the jury. Later this judicial rule was the subject of a statute [Miss. Code Ann. § 99-13-7 (1972)] which prescribes the duties of the judge and jury when an accused is acquitted by reason of insanity.
The sanity of an accused must be determined under theM'Naghten rule which is concisely stated in Eatman v. State, 169 Miss. 295, 153 So. 381 (1934) as follows:
 In this state, as generally in the several states, the rule of law is that the test of criminal responsibility is the ability of the accused, at the time he committed the act, to realize and appreciate the nature and quality thereof — his ability to distinguish right and wrong. (169 Miss, at 299, 153 So. at 381).
For a comprehensive history of the M'Naghten rule, its application and shortcomings see Harvey v. State, 207 So.2d 108
(Miss. 1968). The Court in Harvey and Jones v. State,288 So.2d 833 (Miss., decided Jan. 28, 1974) speaking through Presiding Justice Rodgers and Justice Inzer suggested additional criteria should be added to the M'Naghten
rule, but concluded that, for the time being, the safe course is to continue to submit the question of insanity to the jury under the rule.
Defendant does not contend that he ever suffered from a mental disorder before the night that he killed his son-in-law. The evidence that defendant engaged in bizarre or unusual behavior shows that it happened shortly before the homicide. Appellant argues that his behavior on the night of the killing is sufficient to establish that he did not know the difference between right and wrong at the time he killed his son-in-law, and thus the state did not meet the burden of proof required under Cunningham and the M'Naghten rule.
There is evidence that immediately after the homicide defendant knew his daughter, *Page 263 
knew that he had killed his son-in-law, recognized the deputy and shook hands with him when the officer arrived to investigate the incident. The ambulance driver testified that he did not observe any abnormal behavior on the part of the defendant. The defendant had consumed at least one can of beer earlier in the evening before the homicide and the deputy could still smell beer on the defendant when he arrived for his investigation.
No motive for the homicide was established and in the absence of any prior history of mental disorder, the question of whether or not defendant's bizarre behavior on the night in question raised a reasonable doubt as to his sanity so that he did not appreciate the difference between right and wrong was a jury question which was resolved against him. We hold the evidence was sufficient to sustain the verdict of the jury.
The defendant assigns as error the trial court's failure to grant defendant's Instruction No. 5.[1] The instruction is proper. However, the trial court's failure to grant the instruction is not reversible error because, when all the instructions for the state and the defendant are considered as a whole, they properly state the applicable law. See
Church v. State, 288 So.2d 855 (Miss., decided Jan. 21, 1974); Golden v. State, 223 Miss. 649, 78 So.2d 788 (1955); Ivey v. State, 154 Miss. 60, 119 So. 507 (1928).
Affirmed.
ROGERS, P. J., and PATTERSON, INZER and SMITH, JJ., concur.
[1] The Court instruct [sic] the jury for the Defendant that if, after considering all the evidence in this case, there remains in your mind any reasonable doubt as to whether or not the Defendant, at the time he committed the alleged act, was suffering from any mental disease, from any cause, which prevented him. at such time of committing the alleged act, from knowing the defference [sic] between right and wrong with reference to said alleged act, then you cannot, under your oathes, [sic] find the Defendant guilty of murder.