Mary Alice Taylor was tried for murder and convicted in the Circuit Court of Washington County, Mississippi, from which she was sentenced to serve a life term in the custody of the Mississippi Department of Corrections.
The following two assignments of error were made by the appellant: *Page 443 
(1) The trial court erred when it excluded the proffered testimony of Dr. Gilbert S. Macvaugh, Jr., and Dr. Richard B. Sayner, on the state of mind of the appellant at the time of the commission of the crime; and
(2) The sentencing of the appellant to life imprisonment was pursuant to an unconstitutional mandatory punishment statute.
It is undisputed that on July 24, 1981, fourteen year old Mary Alice Taylor shot and killed Mrs. Maple Markham. The story of Mary Taylor's life was put before the jury in detail, and is encompassed by the record here. Only a part of that story will be repeated in this opinion.
Mary, an unwed teenaged mother, arrived in Greenwood, Mississippi, with her infant son on October 15, 1980. As she was unable to properly care for the child, the Leflore County Court, acting ex parte, and without notice to the appellant, temporarily placed the child in the custody of the Leflore County Welfare Department. On December 21, 1980, Mrs. Maple Markham came to the lodgings of Mary Taylor and took the child from her custody. So began the relationship between these two that has led us to this place.
The baby was placed in a foster home, but Mary Taylor did have visitations with the baby which were arranged for her by Mrs. Markham, as the case worker assigned to the case. These visits were terminated on February 24, 1981, when the County Court made permanent the original temporary order of removal. After that Mary continued to ask Markham to let her visit her baby son, even after March, when Mary learned that she was again pregnant. These visitation requests were denied by Mrs. Markham, and the relationship between the two women seriously deteriorated.
Mary Taylor made her last effort to talk Mrs. Markham into letting her visit her child on the day of July 19, 1981. Mary went to Markham's office and stayed for over three hours, seeking a visit with her first born. Her efforts were fruitless. Finally, Markham offered to drive Mary home. While in the automobile, Markham told Mary that not only could she not visit her child, but that as soon as the baby Mary was then carrying was born, that baby, too, would be removed from Mary's custody. At this point, Mary Taylor took a pistol from her purse and shot Mrs. Markham to death.
At the trial, appellant attempted to introduce the testimony of the two psychologists who would have testified that, because of Mary Taylor's emotional background, she was unable to form the malice necessary to a murder charge, and therefore could be guilty of no more than manslaughter. This testimony was not allowed before the jury, and the trial court instructed the jury both as to manslaughter and as to murder. In this posture the case went to the jury and the jury found Mary Taylor guilty of murder. Mary Taylor was then sentenced to life in the custody of the Department of Corrections.
The first assignment of error urges that the exclusion of the testimony of the psychologists on the appellant's state of mind deprived the jury of critical factual evidence that was relevant to show that, because of her state of mind, Mary Taylor's crime could not have been murder, but was manslaughter.
Manslaughter is defined by Mississippi Code Annotated § 97-3-35
(1972), as follows:
 The killing of a human being without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense, shall be manslaughter.
Murder must be committed with malice aforethought; manslaughter has no such requirement. Hammock v. State, 379 So.2d 323, 328 (Miss. 1980); Clingon v. State, 293 So.2d 823, 827 (Miss. 1974); Carter v. State, 199 Miss. 871, 25 So.2d 470 (1946).
Murder is defined by Mississippi Code Annotated § 97-3-19
(Supp. 1983). The statute does not separate the crime of murder into degrees as some jurisdictions do. *Page 444 
It does, however, make a distinction between murder and capital murder. The critieria for this distinction are such things as the position in society occupied by the victim, i.e. a police officer, or the manner of the killing, i.e. by use of an explosive device.
Those jurisdictions that separate murder into first degree and second degree use totally different criteria than that used in Mississippi. Traditionally, premeditation and deliberation are required for first degree murder as opposed to second degree murder. Such a distinction by degree is non-existent in Mississippi. Here the distinction is not one of degree, but the difference is between murder and manslaughter.
We are asked whether or not expert testimony may be introduced to show, as a partial defense, a defendant's abnormal mental state somewhat less than the complete defense of insanity, in order to reduce the charge from murder to manslaughter. Those few jurisdictions which have addressed this question have not answered it uniformly. One writer has noted,
 The general rule appears to be that insanity, when interposed as a defense in a criminal prosecution, is either a complete defense or none at all. A claim of insanity cannot be used for the purpose of reducing a crime from murder in the first degree to murder in the second degree or from murder to manslaughter, nor can partial insanity serve to diminish the full measure of criminal responsibility for an act of homicide. However, in some jurisdictions the fact that one who committed a homicide was temporarily insane when he formed and executed the design to kill may, under the penal codes, be taken into consideration in determining the degree of the murder and in fixing the penalty for the offense.
40 Am.Jur.2d Homicide, § 114, p. 409 (1968). However, the writer continues,
 A number of jurisdictions, following a doctrine of diminished or partial responsibility, recognize that mental inadequacies or defects not amounting to legal insanity may be shown in defense to a homicide prosecution, as tending to show the diminished capacity of the accused to have entertained a specific mental state, such as malice aforethought, deliberation, or premeditation.
40 Am.Jur.2d Homicide, § 115, p. 410 (1968).
Seven jurisdictions have reached the issue of the admissibility of evidence on the defendant's ability to formulate malice aforethought, thereby reducing the charge from murder to manslaughter. Two jurisdictions have excluded the evidence and five jurisdictions have held that evidence of a defendant's partial insanity is admissible. Three of the five are distinguishable for present purposes, and therefore the existing authorities appear to be evenly divided.
Evidence of a defendant's state of mind, in a second degree murder case, was found to be admissible in the case ofCommonwealth v. McCusker, 448 Pa. 382, 292 A.2d 286 (1972). There the Pennsylvania Supreme Court was asked to decide "whether psychiatric evidence is admissible in a murder prosecution for the limited purpose of determining whether a defendant acted in the heat of passion." Id., at 384, 292 A.2d at 287. Before reaching its decision, the Court noted that, "[t]he ultimate test for adequate provocation [to reduce the crime charged from murder to manslaughter] remains whether a reasonable man, confronted with [a] series of events, became impassioned to the extent that his mind was `incapable of cool reflection.'" Id., at 389-90, 292 A.2d at 290. Then, the court rephrased the "ultimate test" to say that the "relevant inquiry is threefold: did the defendant actually act in the heat of passion when he committed the homicide; did the provocation directly lead to the slaying of the person responsible for the provocation; and was there insufficient `cooling time' thus preventing a reasonable man from using his `reasoning facilities' and `capacity to reflect.'"Id., at 390, 292 A.2d at 290. The Court then said that if any of these three elements be answered in the negative, then the crime charged could and *Page 445 
should be reduced to voluntary manslaughter.
The McCusker Court admitted the testimony into evidence. The Court noted that in answering the three "relevant" questions, and where the question is whether a defendant acted in the heat of passion, it seemed "clear that any evidence — lay or psychiatric — pertinent to that defense should be admissible. The principal vice of rejecting psychiatric testimony, . . . is that it excludes from the consideration of the factfinders evidence of probative value vital to a determination of defendant's state of mind." Id., at 391, 292 A.2d at 290-91. The McCusker Court then made a statement similar to the argument made by appellant here,
 Here the sole and dispositive issue in controversy at trial was appellant's state of mind at the time of the slaying. The Commonwealth's theory was that appellant acted with malice, while appellant sought instead to prove that he acted without malice and in the heat of passion. Surely the admission of relevant and probative psychiatric evidence would have aided the jury in resolving those conflicting claims. The admissibility of relevant psychiatric testimony on the issue of whether defendant acted in the heat of passion does not, of course, intrude upon the jury's traditional function of determining for itself the credibility and weight which it will accord that testimony.
Id. at 391, 292 A.2d at 291.
The Pennsylvania court found the evidence to be both relevant and probative. Stating that psychiatric evidence is regularly admitted to prove the complete defense of insanity, under theMcNaughten test, the court said,
 It would indeed be anamolous to receive psychiatric evidence — as our courts do — to establish the complete defense of insanity but at the same time reject psychiatric evidence which seeks to establish only a partial defense by showing that defendant acted in the heat of passion when he committed the homicide.
Id. at 392-93, 292 A.2d at 291.
Four other jurisdictions have held that expert testimony of a defendant's state of mind is admissible to reduce a charge from murder to manslaughter. In People v. Poddar, 10 Cal.3d 750,111 Cal.Rptr. 910, 518 P.2d 342 (1974), the California Supreme Court held that if "it is established that accused, because he suffered a diminished capacity, was unaware of or unable to act in accordance with the law, malice could not be properly found and the maximum offense for which he could be convicted would be voluntary manslaughter." Id., at 758, 111 Cal.Rptr. at 916, 518 P.2d at 348.
The Supreme Court of Utah has held that, "[w]hile the record before us fails to show facts that would be likely to cause a normal mind to be wrought up to a heat of passion, yet, there is some evidence in the record that the mind of the defendant was so wrought up, and such evidence, together with the evidence tending to show that the defendant was insane" was sufficient to have the jury consider voluntary manslaughter. State v. Green, 78 Utah 580, 602-03, 6 P.2d 177, 186 (1931).
The Supreme Court of Hawaii upheld the following instruction which was given to the jury along with a manslaughter instruction,
 Also, if you find that [defendant's] mental capacity was diminished to the extent that you have a reasonable doubt whether he did harbor malice aforethought, you cannot find him guilty of murder of either the first or second degree.
State v. Santiago, 55 Haw. 162, 166, 516 P.2d 1256, 1258 (1973).
The Missouri Supreme Court has held such evidence to be admissible where the legislature enacted legislation that expressly makes it admissible. State v. Anderson,515 S.W.2d 534 (Mo. 1974).
Both Iowa and New Jersey have reached opposite conclusions. InState v. Gramenz, 256 Iowa 134, 126 N.W.2d 285 (1964), the Iowa Supreme Court noted the difference *Page 446 
between malice aforethought and specific intent, stating that malice aforethought is the specific state of mind necessary to convict of murder whereas specific intent is a necessary element of murder in the first degree as opposed to murder in the second degree. The Gramenz Court felt that "testimony sufficient to establish defendant's lack of mental capacity to have malice aforethought, would also be sufficient to satisfy the requirements of the [McNaughten] right and wrong test and entitle defendant to an acquittal on a plea of insanity rather than a reduction of the sentence of manslaughter." Id., at 142, 126 N.W.2d at 290. The Gramenz position was reaffirmed inVeverka v. Cash, 318 N.W.2d 447 (Iowa 1982). There it was held that the mental element which must be proved on a charge of felony murder did not include premeditation but was rather the same as in second degree murder — malice aforethought, either express or implied. The Iowa court concluded that "[i]n the absence of the premeditation requirement, murder is not a specific intent crime and therefore not subject to the defense of diminished capacity", which the Cash Court had earlier held applies only on the issue of the defendant's ability to form a specific intent. Id. at 449.
The principles announced in State v. McAllister, 41 N.J. 342,196 A.2d 786 (1964) are most instructive. There, the New Jersey Court found the test, in mitigation of the homicide from murder to manslaughter, to be the "English Test." The test involves a two-step inquiry,
 (1) the provocation must be so gross as to cause the ordinary reasonable man to lose his self control and to use violence with fatal results, and (2) the defendant must in fact have been deprived of his self control under the stress of such provocation and must have committed the crime while so deprived.
Id. at 353, 196 A.2d at 792. Citing Weihofen and Overholser,Mental Disorder Affecting the Degree of Crime, 56 Yale L.J. 959 (1947), [hereafter Weihofen and Overholser], the Court noted that the above test contemplates an objective inquiry rather than a subjective one. The McAllister Court concluded,
 Defendant's proffered thesis would make the criterion entirely a subjective test of the actual effect of the action of the deceased upon the mind of the particular defendant charged with his homicide. The application of the "ordinary man" test as the objective standard against which to measure the subjective fact of passion makes defendant's suggested individual subjective test inappropriate. Such a norm presupposes an "ordinary" man, which expression by its very nature contemplates a person without "serious mental and emotional defects."
Id. at 353-54, 196 A.2d at 792.
As noted by Weihofen and Overholser, and followed by the Iowa and New Jersey courts, "the contention that mental abnormality may reduce a killing from murder to manslaughter is different from the contention that it may reduce it from murder in the first degree to murder in the second degree. . . ." Weihofen and Overholser at 969. See also Comment, Premeditation and MentalCapacity, 46 Columbia L.Rev. 1005, 1008-1009 (1946). Weihofen and Overholser explain,
 A defendant's capacity for malice aforethought does not depend upon the same evidence as does his capacity for deliberation and premeditation. The murder-manslaughter distinction has a wholly different history and is based on wholly different criteria from those involved in distinguishing degrees of murder. The former is of common law origin, the latter statutory; the former involves an objective test, the latter subjective. The provocation which at common law reduces a homicide to manslaughter must be such as is calculated to produce hot blood or passion in a reasonable man, an average man of ordinary self-control. Unless it meets this objective standard of reasonableness, the subjective fact of passion does not make the killing manslaughter. Such factors as mental abnormality or intoxication are therefore irrelevant, since the "reasonable man" *Page 447 
standard postulates a sane and sober man.
Weihofen and Overholser at 969-970 (emphasis added).
In their treatise on criminal law, Lafave and Scott echo this result. Lafave and Scott, Criminal Law 328-329, 572-574 (1972), [hereafter Criminal Law]. The authors note that there are four elements to a showing sufficient to reduce a killing to manslaughter from murder:
 (1) There must have been a reasonable provocation. (2) The defendant must have been in fact provoked. (3) A reasonable man so provoked would not have cooled off in the interval of time between the provocation and the delivery of the fatal blow. And (4), the defendant must not in fact have cooled off during that interval.
Id. at 573. Lafave and Scott emphasize that "[w]hat is really meant by `reasonable provocation' is provocation which causes areasonable man to lose his normal self-control. . . ." Id.
at 573. (Emphasis added). Earlier, the two writers had explained,
 Under the traditional doctrine, then, heat-of-passion voluntary manslaughter is distinguishable from murder by resort to objective criteria. True, the defendant must have in fact been provoked and his passion must have in fact not "cooled" at the time of the killing, but in addition the circumstances must have been such that a reasonable man would have been provoked and would not have cooled. This being the case, it is apparent that the concept of partial responsibility has no place in the decision whether what has been charged as murder is actually heat-of-passion voluntary manslaughter. To hold otherwise would conflict with the reasonable man standard, which by its very nature presumes a person without serious mental and emotional defects.
Id. at 328-29.
When approached with this principle in mind, then we can only conclude that the Utah and Pennsylvania courts, when they admitted the evidence, either chose to ignore the objective nature of the test to reduce murder to manslaughter or were unaware of it.
The Pennsylvania result is doubly puzzling, for inCommonwealth v. McCusker, supra, that court went so far as to say that "[t]he ultimate test for adequate provocation remains whether a reasonable man, confronted with [a] series of events, became impassioned to the extent that his mind was `incapable of cool reflection.'" Commonwealth v. McCusker, supra, 448 Pa. at 389-390, 292 A.2d at 290 (emphasis added). Nonetheless, that court then found relevance in psychiatric testimony which tended to show that defendant acted in the heat of passion because of a mental abnormality less than that sufficient to show the complete defense of insanity. Such a conclusion could only be reached by concluding that (1) the concept of a reasonable man contemplates a man with mental abnormalities or (2) the ultimate issue was not whether a reasonable man would have been impassioned. This latter conclusion is unfounded. As shown by Lafave and Scott and by Weihofen and Overholser, the ultimate test is whether a reasonable man would have been impassioned.
The Utah Court, in State v. Green, supra, 78 Utah at 602-603, 6 P.2d at 177, also noted that "the record before us fails to show facts that would be likely to cause a normal mind to be wrought to a heat of passion, yet, there is some evidence in the record that the mind of the defendant was so wrought up" — then, after noting that the ultimate test is whether a reasonable man would have been impassioned, Utah held the evidence admissible with no discussion of the subjective versus the objective nature of murder and manslaughter. See Criminal Law, supra, at 329, fn. 23.
The other three states which have allowed such testimony — Missouri, Hawaii and California — are all distinguishable. In Missouri, the decision was based upon an interpretation of Mo. Ann. Stat. § 552.030(3) (Vernon Supp. 1984), which expressly allowed such evidence to be admitted. The Hawaii decision was also reached for statutory *Page 448 
reasons. See Hawaii Rev.Stat.Ann. § 704-401 (1976).
There are three grounds on which to distinguish the California decision. First, California's statutory definition of manslaughter, unlike Mississippi's, does not require the killing to be in the heat of passion, only that the killing be without malice. Criminal Law, supra, at 329-330. See also West's Ann.Calif.Penal Code § 192 (Supp. 1984). Second, California has an "unusual definition of malice aforethought." Criminal Law,supra, at 329-330. Third, at the time Poddar was rendered, California followed the rule of diminished capacity. It has since abrogated this rule. See West's Ann.Calif.Penal Code § 28 (Supp. 1984).
Appellant here offered the testimony of two psychologists. They would have testified to a reasonable degree of medical certainty "that at the time of the act in question . . . Mary Taylor was not acting with malice aforethought . . . and that, conversely, this could not be anything more than manslaughter." Relying uponHammock v. State, 379 So.2d 323, 328 (Miss. 1980), appellant says that this case "turns on the defendant's state of mind." More accurately, the case turns upon whether the killing was in the heat of passion and without deliberation and malice. This is true because appellant's "state of mind" could conclude the subjective inquiry of premeditation as opposed to the objective one of malice and heat of passion.
Appellant first urges the admission of the testimony because similar psychiatric testimony is regularly admitted on such issues as the complete defense of insanity and whether the defendant knowingly and intelligently waived his rights. This argument does not account for the subjective nature of the inquiry in determining a person's mental capability to be criminally responsible for any crime, and in determining whether a defendant knowingly and intelligently waived his constitutional rights, as opposed to the objective inquiry of malice and heat of passion.
Eatman v. State, 169 Miss. 295, 153 So. 381 (1934), sets out the test in an insanity defense case as "ability of the accused, at the time he committed the act, to realize and appreciate the nature and quality thereof — his ability to distinguish right and wrong." Id. at 299, 153 So. at 381 (emphasis added). This test is clearly subjective. Without question, when insanity is the defense, expert opinion testimony is admitted as to that ultimate fact in issue. Alexander v. State, 358 So.2d 379
(Miss. 1978); Lewis v. State, 209 Miss. 110, 46 So.2d 78
(1950). In that circumstance, both the defense and the state are allowed to present expert opinion evidence as well as lay opinion evidence as to whether or not the defendant could distinguish right from wrong at the time of the commission of the crime. When this defense is raised, the defendant's whole life is then open for admission into evidence. McLeod v. State, 317 So.2d 389
(Miss. 1975). Experts can often provide assistance to the jury in understanding the complex concepts involved in the issue of insanity since such concepts are not within the scope of knowledge or experience of the average juror. 2 S. Gard, Joneson Evidence § 14:38 (6th Ed. 1972); 31 Am.Jur.2d, Expert andOpinion Evidence § 86 (1967). To the contrary, the issue of malice aforethought, premeditation, or heat of passion is usually considered to be within the scope of the average juror's knowledge or experience. See 29 Am.Jur.2d, Evidence, § 355 (1967). For that reason such questions as to the distinction between murder and manslaughter have traditionally been left to the jury for determination without evidence adduced by expert opinion. As we have stated, the defense of insanity raises the broad question of whether or not there is criminal responsibility, a subjective assessment; the distinction between murder and manslaughter is one of degree of responsibility and is objective in nature.
We also accept similar expert opinion testimony, subjective in nature, to determine if a defendant knowingly and intelligently waived his constitutional rights in making a confession. Doverv. State, *Page 449 227 So.2d 296 (Miss. 1969). In Williamson v. State, 330 So.2d 272
(Miss. 1976), this Court said that in determining the voluntariness of a confession of a mentally weak person the question is, "`whether the defendant's will [not the will of a reasonable man] was overborne at the time he confessed' . . . The State proved beyond a reasonable doubt, after taking intoconsideration appellant's weak intellect, that he freely and voluntarily . . ." gave the confession. Id. at 276 (emphasis added). Again, this is a subjective test and does not meet the objective test requirements necessary in the determination of the issue of malice or heat of passion.
Relying upon Collins v. State, 361 So.2d 333 (Miss. 1978), appellant urges that the determination of a defendant's state of mind at the time of the criminal activity is a purely subjective inquiry and therefore expert testimony on the defendant's mental condition as it affects her ability to react to external events would aid the jury in exercising its function as a fact finder. Contrary to appellant's contention, the question of whether a defendant acted without malice and in the heat of passion is an objective one and is not subjective at all. State v. McAllister,supra; Weihofen and Overholser, supra; Criminal Law, supra.
This question is quite different from the subjective test of premeditation and deliberation which forms the distinction between murder in the first degree and murder in the second degree: a distinction arising solely in modern statutes, not found at common law nor in Mississippi today. Where such a distinction exists, evidence such as that which appellant attempts to admit here would presumably be admissible. See,e.g., Weihofen and Overholser, supra, at 969-70. However, absent this distinction, the question is one of either murder or manslaughter and the test is whether the defendant acted in the heat of passion and without malice. Hammock v. State, supra.
This depends upon a homicide induced by provocation "which causes a reasonable man to lose his normal self-control. . . ."Criminal Law, supra, at 573 (emphasis added). Therefore, evidence which is admitted to show that because of a mentalabnormality defendant acted in the heat of passion and without malice is not relevant to the inquiry before the Court.
In Collins v. State, supra, expert psychiatric testimony was admitted into evidence and the defendant was convicted of manslaughter and not murder. But that case is not authority for the admission of expert opinion evidence where the defense of insanity is not raised. In Collins both the defense of insanity and the alternative defense of manslaughter were raised at trial. Therefore, the expert opinion testimony was clearly admissible. Appellant here did not raise the complete defense of insanity. Therein lies the crucial difference between the two cases. Where insanity is not the defense, the determination of the ultimate fact of murder or manslaughter is left to the jury and is not subject to expert opinion testimony. Cowan v. State,399 So.2d 1346 (Miss. 1981); Austin v. State, 324 So.2d 245 (Miss. 1975);Newell v. State, 308 So.2d 71 (Miss. 1975); West v. State,249 So.2d 650 (Miss. 1971); McCormick v. State, 190 Miss. 521,1 So.2d 234 (1941).
Appellant urges that as lay testimony was admitted here then certainly appellant's expert opinion testimony should also have been admitted. We emphasize that the issue here is not "state of mind" but whether the appellant acted in the heat of passion and without malice. The question is an objective one, being whether a reasonable man would have been so provoked. Such a standard presupposes an individual without "serious mental and emotional defects". State v. McAllister, supra, 41 N.J. at 354, 196 A.2d at 792. Thus, expert testimony that a defendant acted in the heat of passion and without malice because of mental abnormality is irrelevant to the consideration. Lay testimony which put before the jury the events as they transpired, i.e. the taking of defendant's baby, without delving into the subjective thoughts of the defendant, was properly admitted so that the jury could determine *Page 450 
the manslaughter issue. Merely because lay opinion is admissible it does not automatically follow that expert opinion testimony is admissible. This is true here, where the expert opinion evidence was offered on the ultimate issue of fact (malice or heat of passion) while the lay testimony was not so offered. So long as the complete defense of insanity is not at issue, expert psychiatric testimony is not available to either party to attempt to reduce the charge of murder to one of manslaughter.
The contention that expert opinion evidence is admissible on the state of mind of the defendant has already been addressed by this Court in Newell v. State, supra, and the opinion testimony was not admitted in evidence. While Newell did not involve the issue of malice or heat of passion, it did concern the defendant's state of mind at the critical moment with regard to intent. The objective test of both issues is the same. There this Court said:
 The intention of a party is a fact determination to be made by the jury from the evidence. In arriving at this determination it has the duty to consider the testimony concerning the assault, the surrounding circumstances, including the expressions made by participants. To permit comment on the subjective intentions of an accused by a witness based on conclusions reached from his observation invades the province of the fact finders. The issue of intent must be decided by the jury from the evidence in the case and not the conclusion of others. Shanklin v. State, 290 So.2d 625 (Miss. 1974), and Golden v. State, 223 Miss. 649, 78 So.2d 788 (1955).
Id. 308 So.2d at 73.
For these reasons we find that there is no merit to the first assignment of error of the appellant.
The final assignment of error is that appellant was sentenced to life under an unconstitutional sentencing statute, as that statute does not provide for individual consideration of the offense and the offender and thus is in violation of the Eighth and Fourteenth Amendments to the United States Constitution. As authority for this position appellant cites Roberts v.Louisiana, 431 U.S. 633, 97 S.Ct. 1993, 52 L.Ed.2d 637 (1977). The appellant did not raise the issue of the constitutionality of the statute in the trial court and as such is procedurally barred from arguing it here. Williamson v. State, 330 So.2d 272, 276 (Miss. 1976); State v. The Cabana Terrace, 247 Miss. 26,153 So.2d 257 (1963). Notwithstanding this procedural bar, we will consider appellant's argument arguendo.
Roberts v. Louisiana, supra, held that in meting out sentences of death, consideration must be made for mitigating factors as to the particular offender and particular offense.Id. 431 U.S. at 636, 97 S.Ct. at 1995, 52 L.Ed.2d at 641. To do otherwise would constitute cruel and unusual punishment under the Eighth and Fourteenth Amendments. But, Roberts involved the death penalty. In this regard, the Supreme Court of the United States has stated,
 We recognize that, in noncapital cases, the established practice of individualized sentences rests not on constitutional commands, but on public policy enacted into statutes. The considerations that account for the wide acceptance of individualization of sentences in noncapital cases surely cannot be thought less important in capital cases. Given that the imposition of death by public authority is so profoundly different from all other penalties, we cannot avoid the conclusion that an individualized decision is essential in capital cases. The need for treating each defendant in a capital case with that degree of respect due the uniqueness of the individual is far more important than in noncapital cases. A variety of flexible techniques — probation, parole, work furloughs, to name a few and various postconviction remedies, may be available to modify an initial sentence of confinement in noncapital cases. The nonavailability of corrective or modifying mechanisms with respect to an executed capital sentence underscores the need for individualized consideration as a constitutional *Page 451 
requirement in imposing the death sentence.
Lockett v. Ohio, 438 U.S. 586, 604-605, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973, 990 (1978). The Supreme Court further stated,
 Sentencing in noncapital cases presents no comparable problems. We emphasize that in dealing with standards for imposition of the death sentence we intimate no view regarding the authority of a State or of the Congress to fix mandatory, minimum sentences for noncapital crimes.
Id. at 605, fn. 13, 98 S.Ct. at 2965, 57 L.Ed.2d at 990. The Supreme Court later explained,
 Because a sentence of death differs in kind from any sentence of imprisonment, no matter how long, our decisions applying the prohibition of cruel and unusual punishments to capital cases are of limited assistance in deciding the constitutionality of the punishment meted out to Rummel.
Rummel v. Estelle, 445 U.S. 263, 272, 100 S.Ct. 1133, 1138, 63 L.Ed.2d 382, 390 (1980).
The Mississippi Supreme Court has also addressed this issue. InWhite v. State, 375 So.2d 220 (Miss. 1979), this Court stated,
 The appellant complains that Mississippi Code Annotated Section 97-3-65 (1972) violates due process and equal protection of the law and is contrary to Rule 5.13, Mississippi Criminal Rules, in that no provision is made for the jury to consider mitigating circumstances in fixing defendant's sentence. The requirements of Jackson v. State, 337 So.2d 1242
(Miss. 1976), relating to a bifurcated trial apply only to cases involving capital offenses. The law requires no such procedure in a charge less than capital and there is no merit to this assignment.
Id. 375 So.2d at 222-223.
Based upon these authorities the mandatory life sentence meted out to appellant does not violate the Eighth and Fourteenth Amendments of the Constitution of the United States and that part of her second assignment of error is without merit.
The last part of the second assignment of error is the contention that because appellant is a minor her sentence should be vacated and resentencing ordered to conform to this Court's requirements in May v. State, 398 So.2d 1331 (Miss. 1981). There is no merit to this assignment and it is based upon a misconception of the May rule. To trigger the May
requirements, the trial court must invoke Rule 5.13 Uniform Criminal Rules of Circuit Court Practice, and that was not done here.
Rule 5.13 provides that the trial court may grant a bifurcated trial in felony cases where the penalty is not death. This may be done, but it does not have to be done. Appellant here did not request a bifurcated trial and the trial court did not elect to grant a bifurcated trial. In May, supra, the trial was undertaken in the bifurcated manner. Such is not the case here. It was not error to avoid the bifurcated trial nor was the mandatory life sentence error.
The trial was properly conducted and the jury was properly instructed upon both manslaughter and murder. There is no merit to any of the assignments of error. Therefore, we affirm.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and BOWLING, HAWKINS, DAN M. LEE and PRATHER, JJ., concur.
ROBERTSON, J., not participating. *Page 452